UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES SECURITIES AND )
EXCHANGE COMMISSION, )
 )
           Plaintiff, )
 )
     v. )          Civil Action No. 09-1423 (GK)
 )
ELAINE M. BROWN, <u>et</u> <u>al.</u>, )
 )
           Defendants. )
 )

MEMORANDUM OPINION

Plaintiff United States Securities and Exchange Commission ("SEC") brings this action against Defendants[1] Elaine M. Brown and Gary A. Prince alleging violations of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77a <u>et</u> <u>seq</u>, the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a <u>et</u> <u>seq</u>, and Rules promulgated under the Exchange Act. This matter is before the Court on Defendants' Motions to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). [Dkt. Nos. 13, 14]. Upon consideration of the Motions, Opposition, Replies, and the entire record herein, and for the reasons stated below, Defendant Brown's Motion to Dismiss is **granted in part, and denied in part**, and Defendant Prince's Motion to Dismiss is **denied**.

_____

[1]     The Complaint was originally brought against a third Defendant, Steven R. Chamberlain. On February 18, 2010, after receiving notice of Defendant Chamberlain's death, the Court granted the Consent Motion for Order Dismissing Defendant Steven R. Chamberlain as a Party pursuant to Fed. R. Civ. P. 21.

## I.   Background[2]

Defendants Brown and Prince are former employees of Integral Systems, Inc. ("Integral"), a publicly traded Maryland corporation that manufactures ground-based controls for satellite systems. Defendant Brown was the Chief Financial Officer and Principal Accounting Officer of Integral from 1997 until May of 2007, and the Vice President of Administration from 2007 until she resigned from that position in July 2008. Defendant Prince was hired as Integral's Chief Executive Officer in 1982, but then resigned in 1995 shortly before pleading guilty in the Central District of California to a conspiracy to commit securities fraud and to making false statements in connection with his conduct as an officer of another corporation. United States v. Prince, No. 95-cr-00771 (C.D. Cal. Sept. 5, 1995).

In 1994, the United States District Court for the District of Columbia enjoined Prince from violating the antifraud and lying-to-auditors provisions of the Exchange Act based on the conduct underlying his guilty plea in the Central District of California. SEC v. Bolen, No. 93-cv-01331 (D.D.C. Aug. 18, 1994). In 1997, the SEC issued an Order ("1997 Order") permanently barring Prince from

---

[2]   For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008); Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, the facts set forth herein are taken from the Complaint unless otherwise noted.

appearing before the Commission as an accountant. <u>In re Gary A.</u>
<u>Prince</u>, Release No. 38,765, 64 S.E.C. Docket 2074, 1997 WL 343054
(June 24, 1997).

In 1998, Prince was re-hired by Integral. Until his
termination from Integral on March 30, 2007, Prince held various
titles, including Director of Mergers and Acquisitions, Director of
Strategic and Financial Planning, and Managing Director of
Operations. The SEC alleges that Prince had "substantial authority
and responsibilities" during this nine-year period that made him a
<u>de</u> <u>facto</u> officer of Integral in violation of its 1997 Order. The
"substantial authority and responsibilities" included Prince's
authority to approve major contracts, attendance at Integral's
Board of Director meetings, and evaluation of potential mergers.
Prince was also allegedly a member of a policy-making group of
senior executive officers, and he was compensated at levels equal
to Integral's top-ranking officers. Compl. ¶¶ 21-29.

In the period between 1998 and August 2006, when Integral
Systems named Prince as an officer, Prince's alleged status as a de
facto officer of the company was never disclosed in periodic
filings with the SEC or in proxy statements. The SEC claims this
was a material omission in violation of provisions of the
Securities Act, the Exchange Act, and related Rules. Specifically,
the SEC alleges that both Defendants (1) violated § 17(a) of the
Securities Act, (2) violated § 10(b) of the Exchange Act and Rule

10b-5, (3) aided and abetted Integral Systems's violations of Exchange Act § 13(a) and Rules 12b-20 and 13a-1, (4) violated Exchange Act Rule 13a-14, and (5) aided and abetted violations of Exchange Act § 14(a) and Rule 14a-9 by Steven Chamberlain, Integral Systems's former Chief Executive Officer. Defendant Prince is also charged with violations of Exchange Act § 16(a), Rule 16a-3, and the 1997 Order.

On September 28, 2009, Defendants Brown and Prince filed Motions to Dismiss [Dkt. Nos. 13 and 14], relying upon the statute of limitations contained in 28 U.S.C. § 2462, Fed. R. Civ. P. 9(b), and Fed. R. Civ. P. 12(b)(6). Defendant Brown also argues that the entire Complaint is void because the term "officer" is impermissibly vague.

## II. Standard of Review

Under Rule 9(b), "the circumstances that the claimant must plead with particularity include matters such as the time, place and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud." United States ex rel. Totten v. Bombardier Corp., 286 F.3d 542, 551-52 (D.C. Cir. 2002)). "Conclusory allegations that a defendant's actions were fraudulent and deceptive are not sufficient to satisfy 9(b)." Shekoyan v. Sibley Int'l Corp., 217 F.Supp.2d 59, 73 (D.D.C. 2002).

The purpose of the heightened pleading standard in Rule 9(b) is two-fold. First, it ensures that the defendant is put on notice of the claims brought against him or her. Second, Rule 9(b)'s particularity requirement "prevents attacks on [the defendant's] reputation where the claim for fraud is unsubstantiated, and protects against a strike suit brought solely for its settlement value." In re U.S. Office Prod. Sec. Litig., 326 F.Supp.2d 68, 73 (D.D.C. 2004). Rule 9(b) does not abrogate the "short and plain statement of the claim" standard in Rule 8(a); instead, the two rules function in harmony. In re U.S. Office Products Sec. Litig., 326 F.Supp.2d 68, 74 (D.D.C. 2004) (citing Kowal v. MCI Comms. Corp., 16 F.3d 1271, 1278 (D.C. Cir. 1994)).

Under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal quotations omitted) (citing Twombly, 550 U.S. at 557). Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the pleaded factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1940.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. Under the standard set forth in Twombly, a "court deciding a motion to dismiss must . . . assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 18 (D.C. Cir. 2008) (internal quotations marks and citations omitted); see also Tooley v. Napolitano, 586 F.3d 1006, 1007 (D.C. Cir. 2009) (declining to reject or address the government's argument that Iqbal invalidated Aktieselskabet).

## III. Analysis

Defendants make several arguments in support of their Motions to Dismiss. First, Defendant Brown seeks to narrow the scope of the Complaint by arguing: (1) that the statute of limitations in 28 U.S.C. § 2462 bars all claims based on conduct occurring before July 30, 2005; and (2) that Defendants had no obligation to disclose Prince's conviction after 2002, so all claims based on their failure to do so from 2002-2006 should be dismissed. Second, Brown argues that all claims should be dismissed because the term "officer," the definition/interpretation of which is central to the SEC's allegation that Prince acted as a de facto officer at Integral, is void for vagueness. Third, Brown argues that Counts I

and II fail to plead fraud with the particularity required by Rule 9(b).

Finally, Defendants Brown and Prince both argue that certain counts in the Complaint fail to state a claim under Rule 12(b)(6). Brown argues that Counts I, II, IV, and V fail as against her. Prince challenges Counts I and II on the basis that the SEC has failed to allege facts sufficient to hold him liable as a primary actor under §§ 17(a) and 10(b) or to establish that he has a duty to disclose information under these provisions.

## A. Statute of Limitations

As neither the Exchange Act nor the Securities Act includes a statute of limitations, Brown argues that the "catch-all" statute of limitations in 28 U.S.C. § 2462 applies to bar all claims based on conduct that occurred more than five years before the filing of the Complaint. Def. Brown's Mot. at 14. Section 2462 states that:

> Except as otherwise provided by Act of Congress, an action, suit, or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462. Specifically, Brown argues that § 2462 bars the SEC from seeking equitable relief and civil penalties against her on the basis of conduct that occurred before July 30, 2004, or more

than five years before the SEC filed its Complaint on July 30, 2009 [Dkt. No. 1].

### 1. Equitable Relief

In response to Brown's argument, the SEC contends that equitable relief--which includes the injunctions and officer-and-director bar sought against Defendant Brown--are "remedial" in nature. Remedial relief does not constitute a "penalty" under § 2462, and so is not subject to its statute of limitations. See SEC v. Tandem Mgmt., Inc., No. 95-cv-8411, 2001 WL 1488218, at *6 (S.D.N.Y. Nov. 21, 2001) ("Courts have found that SEC suits for equitable and remedial relief, including requests for permanent injunctions and disgorgement, are not governed by § 2462 because they are not actions or proceedings for a "penalty" within the meaning of the statute.") (collecting cases).

Brown disagrees. Relying on Johnson v. SEC, 87 F.3d 484 (D.C. Cir. 1996), she argues that the equitable relief sought in this case is actually penal in nature. In Johnson, our Court of Appeals held that a broker's censure and six-month suspension following an administrative SEC proceeding were punitive in nature, and thus subject to § 2462's statute of limitations. In reaching this conclusion, the Court explained that "a 'penalty,' as the term is used in § 2462, is a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond remedying the

damage caused to the harmed parties by the defendant's action." Id. at 488.

In addition, the Court of Appeals was careful to emphasize that the administrative judge in the SEC proceeding had focused on Johnson's wrongful conduct under the Exchange Act, and not the likelihood of future harm. Id. at 489-90. As the Court explained, "[t]his sanction would less resemble punishment if the SEC had focused on Johnson's current competence or the degree of risk she posed to the public." Id. at 489; see also McCurdy v. SEC, 396 F.3d 1258, 1265 (D.C. Cir. 2005) (where SEC's suspension of plaintiff was not punishment because it was meant to protect public); Meadows v. SEC, 119 F.3d 1219, 1228 n.20 (5th Cir. 1997) (distinguishing Johnson, and concluding that the SEC's temporary bar from association following an administrative proceeding was not penal in nature because the Administrative Law Judge made findings regarding the risk of future harm).

This Court must therefore consider whether the equitable relief sought against Brown would be justified, if granted, on the basis of Defendant's wrongful conduct--in which case it is penal in nature--or on the risk of future harm. "To obtain equitable remedies, the government must demonstrate a 'reasonable likelihood of further violation[s] in the future.'" United States v. Philip Morris USA, Inc., 566 F.3d 1095, 1132, (D.C. Cir. 2009) (quoting SEC v. Savoy Indus., Inc., 587 F.2d 1149, 1168 (D.C. Cir. 1978));

see also SEC v. First City Fin. Corp., Ltd., 890 F.2d 1215, 1228
(D.C. Cir. 1989) (applying Savoy Indus. test to SEC action); SEC v.
Bolla, 401 F.Supp.2d 43, 73-74 (D.D.C. 2005) (same). The courts in
this Circuit therefore must consider "the likelihood that
misconduct will recur," among other consistent factors, in order to
determine whether injunctive relief or an officer-and-director bar
is merited. SEC v. Johnson, 595 F.Supp.2d 40, 45 (D.D.C. 2009). The
Second Circuit has similarly made clear that the likelihood of
Defendants' future misconduct is an "essential" component in
imposing a lifetime bar. SEC v. Patel, 61 F.3d 137, 141, 142 (2d
Cir. 1995); accord SEC v. Levine, 517 F.Supp.2d 121, 145 (D.D.C.
2007).

Thus, the equitable relief sought by the SEC should only be
granted under this Circuit's law upon a showing of future risk of
harm. Given this requirement, Johnson's reasoning--that the
sanctions were punitive in nature because they focused exclusively
on the individual's past conduct--is inapplicable to this case.
Equitable relief which is granted upon a showing that it is
necessary to prevent future harm to the public is remedial, and not
punitive. Thus, the statute of limitations in § 2462 does not apply
to the equitable relief sought by the SEC. Defendant Brown's Motion
to Dismiss the claims for injunctive relief and an officer-and-
director bar under § 2462 is therefore **denied.**

## 2. Civil Penalties

The parties do not dispute that the SEC's claim for civil penalties, in contrast, is subject to the five-year statute of limitations in § 2462. Defendants argue that § 2462 therefore should apply to bar any such claims based on conduct occurring before July 30, 2004. The SEC counters, however, that these claims are saved because the statute of limitations in § 2462 is tolled by the fraudulent concealment doctrine and the continuing violation doctrine.

### a. The Fraudulent Concealment Doctrine

It is well established that, like all federal statutes of limitation, § 2462 is subject to equitable tolling. Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (equitable tolling "is read into every federal statute of limitation"); 3M Co. v. Browner, 17 F.3d 1453, 1461 n.15 (D.C. Cir. 1994) (suggesting that doctrine of fraudulent concealment would apply to § 2462); Fed. Election Comm'n v. Williams, 104 F.3d 237, 240 (9th Cir. 1996) (applying doctrine of fraudulent concealment to § 2462); SEC v. Gabelli, No. 08-cv-3868, 2010 WL 1253603, at *6-7 (S.D.N.Y. March 17, 2010) (same).

"To toll the limitations period for fraudulent concealment, the Commission must demonstrate: (1) that Defendants concealed the existence of the cause of action; (2) that it did not discover the alleged wrongdoing until some point within five years of commencing

-11-

this action; and (3) that its continuing ignorance was not attributable to lack of diligence on its part." <u>SEC v. Jones</u>, 476 F.Supp.2d 374, 382 (S.D.N.Y. 2007). Fed. R. Civ. P. 9(b) requires that a plaintiff "plead with particularity the facts giving rise to the fraudulent concealment claim and [] establish that [it] used due diligence in trying to uncover the facts." <u>Larson v. Northrop Corp.</u>, 21 F.3d 1164, 1173 (D.C. Cir. 1994) (internal quotation and citation omitted).

The Complaint fails to allege any facts that would establish that the SEC used due diligence in trying to uncover Defendants' wrongdoing from 1998 to 2005. More problematically, the Complaint fails to allege when the SEC discovered the claims; there are no allegations that the SEC remained ignorant of Prince's role at Integral up until five years or less before filing its Complaint. For these reasons, the Court concludes that the SEC has failed to adequately plead Defendants' fraudulent concealment, and the five-year statute of limitations in § 2462 is not tolled for the civil penalties claims. <u>See</u> <u>Gabelli</u>, 2010 WL 1253603, at *7 (rejecting fraudulent concealment doctrine when plaintiff SEC failed to allege due diligence).

### b.    The Continuing Violation Doctrine

In the alternative, the SEC argues that the claims barred by § 2462 are part of a "continuing, integrated fraudulent scheme" which ended within the limitations period. Pl.'s Opp'n at 25. In

other words, the five-year statute of limitations did not begin to accrue until the scheme ended with the disclosure of Prince's role at Integral on August 8, 2006. Id.

Our Court of Appeals has not considered whether the "continuing violation doctrine," which originated in the federal employment discrimination context, applies to claims brought in the securities fraud context. District courts in the Second and Third Circuits have indicated great skepticism that it does. In re Comverse Tech., Inc. Sec. Litig., 543 F.Supp.2d 134, 155 (E.D.N.Y. 2008) (noting that "[t]he weight of authority in [the Second Circuit] is skeptical of the application of the continuing violations doctrine in securities fraud cases"); In re DVI, Inc. Sec. Litigation, No. 03-cv-5336, 2005 WL 1307959, at *11 (E.D. Pa. May 31, 2005) (declining to extend continuing violation doctrine to case brought under securities laws) (unreported opinion); but see SEC v. Kelly, 663 F.Supp.2d 276, 287-88 (S.D.N.Y. 2009) (applying continuing violation doctrine in case brought by SEC).

However, even if the doctrine does apply in the securities fraud context, there are factual disputes which would determine its application. For example, the parties disagree as to when the alleged scheme to conceal Prince's officer status began, when Defendant Brown's obligation to disclose his status arose, and if

she had such an obligation.[3] Discovery has not yet even been concluded. The Court therefore defers consideration of this issue until it has the benefit of a more fully developed factual record. Cf. In re Comverse, 543 F.Supp.2d at 155 (concluding "it would be prudent to defer consideration of [the continuing violation doctrine] issue until the factual record [] is more fully developed"); SEC v. Schiffer, No. 97-cv-5853, 1998 WL 226101, at *3 (S.D.N.Y. May 5, 1998) (concluding that decision on continuing violation doctrine issue was premature, given undetermined fact issues). The Motion to Dismiss the SEC's claims for civil penalties based on conduct occurring before 2005 is therefore **denied without prejudice** at this time.

## B. Regulation S-K's Look-Back Provision

Until December 23, 2009,[4] Item 401(f) of Regulation S-K required disclosure of injunctions and/or criminal proceedings or convictions "that occurred during the past five years and that are material to an evaluation of the ability of any director . . . or executive officer." 17 C.F.R. § 229.401(f) (2009). Defendant Brown argues that any claims included in Counts I-V which allege her failure to disclose Prince's conviction and injunction after June

---

[3] This of course would be a material fact in dispute for the jury to resolve.

[4] 17 C.F.R. § 229.401(f) was amended on December 23, 2009 to require disclosure of injunctions and/or criminal proceedings or convictions that occurred during the past ten, as opposed to five, years. See 17 C.F.R. § 229.401(f) (2010).

23, 2002--five years after the Commission permanently enjoined Prince from appearing or practicing before it as an accountant-- must be dismissed because there was no duty to disclose under Regulation S-K after that date.

The SEC responds that the five-year limitation in Regulation S-K is irrelevant because the sole test for determining whether information must be disclosed is whether it is material, i.e. whether there is "a substantial likelihood that a reasonable investor would consider it important." Basic, Inc. v. Levinson, 485 U.S. 224, 231-232, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Under the SEC's view, if an officer's legal history remains material to investors after five years, it must be disclosed regardless of Regulation S-K's five-year limitation.

"[N]o authority suggests that Regulation S-K is preemptive of the materiality requirement." Degulis v. LXR Biotechnology, Inc., 928 F.Supp. 1301, 1314 (S.D.N.Y. 1996). The SEC is therefore correct that the fact that Regulation S-K does not require disclosure of particular information does not answer whether the information is material to investors under the securities laws. See SEC v. Pace, 173 F.Supp.2d 30, 32-33 (D.D.C. 2001) (illegal transfer of $36,659.28 to defendant's personal account "was material-and had to be disclosed-even if Item 404 [of Regulation S-K] did not require it"); In re WorldCom, Inc. Sec. Litig., 346 F.Supp.2d 628, 689 (S.D.N.Y. 2004) ("[N]on-disclosure of an

underwriter or issuer's conflicts of interest can constitute material omissions, even where no regulation expressly compels the disclosure of such conflicts.").

However, the SEC's argument does not answer the issue raised by Brown. Putting aside materiality, there is no general duty to disclose all material information under the securities laws. <u>Basic, Inc. v. Levinson</u>, 485 U.S. at 239 ("Silence, absent a duty to disclose, is not misleading . . . ."); <u>Chiarella v. United States</u>, 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980).

However, corporate officers such as Defendant Brown do have a duty to disclose material information when required by a specific rule or regulation or "when silence would make other statements misleading or false." <u>In re XM Satellite Radio Holdings Sec. Litig.</u>, 479 F.Supp.2d 165, 178 (D.D.C. 2007) (citation and internal quotations omitted). In the latter case, "[t]he touchstone of the inquiry is . . . whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor . . . ." <u>Id.</u> (citation and internal quotations omitted).

Although Item 401 of Regulation S-K did not impose a duty on Defendant Brown to disclose Prince's legal background after June 23, 2002, it is certainly possible that the omission could have affected the "total mix of information" in Integral's filings,

rendering them misleading and giving rise to a duty to disclose.[5] In fact, the SEC's Complaint alleges just this, and for purposes of a Motion to Dismiss, these allegations must be deemed true. Compl. ¶¶ 40-57. Defendant Brown did not address this issue, but instead assumed that Regulation S-K was the only potential source of a duty to disclose Prince's legal background. Consequently, the Motion to Dismiss on the basis of Item 401 of Regulation S-K is **denied.**

### C. Void for Vagueness

Defendant Brown next argues that the Complaint should be dismissed in its entirety because the definition of "officer," which lies at the heart of the SEC's allegations that Defendants concealed Prince's officer status, is an unconstitutionally vague term. A rule is unconstitutionally vague when "men [sic] of common intelligence must necessarily guess at its meaning." Broadrick v. Oklahoma, 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973). If the rule is an economic regulation or if it includes a scienter requirement, the Court's review is less strict. Village of

---

[5]     For this reason, United States v. Yeaman, 987 F.Supp. 373 (E.D. Pa. 1993), relied upon by the Defendant, is distinguishable. In Yeaman, the court concluded that the defendant had no duty to disclose his legal background in filings with the SEC because Item 401 of Regulation S-K did not require it. Id. at 384-85. However, the Court did not consider whether the omission rendered the defendant's filings misleading. In addition, because Yeaman involved a criminal prosecution, the Court rested its conclusion in part on the need for notice to the defendant of a duty to disclose in order to satisfy due process.

Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

As the SEC points out, the terms "officer" and "executive officer" are defined in Exchange Act Rules 3b-2 and 3b-7. "Officer" means "a president, vice president, secretary, treasurer or principal financial officer, comptroller, or principal accounting officer, and any person routinely performing corresponding functions with respect to any organization . . . ." 17 C.F.R. § 240.3b-2. "Executive Officer" means a registrant's "president, any vice president . . . in charge of a principal business unit, division, or function (such as sales, administration, or finance), and any other officer who performs a policy making function or any other person who performs similar policy making functions for the registrant." 17 C.F.R. § 240.3b-7.

Courts regularly rely on these definitions to determine whether an individual acted as a de facto officer of a company. See, e.g., C.R.A. Realty Corp. v. Crotty, 878 F.2d 562, 565 (2d. Cir. 1989); SEC v. Solucorp, 274 F.Supp.2d 379, 420 (S.D.N.Y. 2003). While an individual's title is relevant to the question of whether he or she was an officer, courts must look to the facts of each situation and determine whether the defendant "exercise[d] the executive responsibilities traditionally associated with corporate officers." United States v. Jensen, 537 F.Supp.2d 1069, 1081 (N.D.

Cal. 2008), <u>vacated on other grounds</u>, <u>United States v. Reyes</u>, 577 F.3d 1069 (9th Cir. 2009).

Given this case-by-case approach, it is not surprising that the SEC, as Defendant Brown points out, has refused to clarify whether certain corporate positions such as general counsel categorically fall within the definition of "officer." <u>See</u> Def. Brown's Mot. to Dismiss at 12. However, this refusal does not mean that the term lacks any standard at all. <u>Village of Hoffman Estates</u>, 455 U.S. at 495 n.7 (vagueness challenges not raising First Amendment issues must prove that no standard of conduct is specified at all). Given the expansive definitions set forth in Rules 3b-2 and 3b-7, the Court is not persuaded that corporate officers like Defendant Brown must guess at the meaning of the term "officer."

Moreover, with the exception of Count I, all of the claims in the Complaint include a scienter requirement. <u>Aaron v. SEC</u>, 446 U.S. 680, 691, 100 S.Ct. 1945, 1953, 64 L.Ed.2d 611 (1980) (scienter required for § 10b and Rule 10b-5 claims); <u>SEC v. Treadway</u>, 430 F.Supp.2d 293, 323 (S.D.N.Y. 2006) (knowledge required in aiding and abetting claims); 15 U.S.C. § 7241(a)(1), (2), (3) (requiring certification from officers that, based on their knowledge, no material omissions were made in annual reports). Because the SEC must prove that Brown either knew or was reckless with regard to Prince's officer status, the danger of

imposing liability in the absence of notice of what constitutes an "officer" is minimal. Finally, the securities laws are economic in nature, which means they are subject to a less strict vagueness test because the "subject matter is [] more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." Village of Hoffman Estates, 455 U.S. at 498. For these reasons, Defendant Brown's Motion to Dismiss the Complaint on the ground that "officer" is void for vagueness is **denied.**

### D. Failure to Plead Fraud with Particularity Under Rule 9(b)

Defendant Brown argues that the Complaint fails to satisfy Rule 9(b)'s heightened pleading requirement because it: (1) does not allege Prince's role as an executive officer by demonstrating that he performed a policy making function similar to those performed by Integral's president or vice president in charge of a principal business unit, division, or function; (2) does not state when Prince became an executive officer at Integral, beyond stating that it was after 1998; and (3) does not specify which of Prince's alleged job responsibilities "caused him to cross the threshold from non-officer to executive officer." Def. Brown's Mot. at 7-11.

As noted earlier, a complaint alleging fraud must "state the time, place, and content of the false representations, the fact misrepresented and what was retained or given up as a consequence of the fraud[,] ... and identify individuals allegedly involved in

the fraud." <u>See</u> <u>U.S. ex rel. Williams v. Martin-Baker Aircraft Co.</u>, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citing <u>Kowal v. MCI Comms. Corp.</u>, 16 F.3d 1271, 1278 (D.C. Cir. 1994)). Specifically,

> [a] complaint alleging securities fraud complies with Rule 9(b) if it sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

<u>Burman v. Phoenix Worldwide Industries, Inc.</u>, 384 F.Supp.2d 316, 328 (D.D.C. 2005) (citation omitted).

The Complaint alleges that Defendant Brown concealed Prince's "role and involvement in the company" "[f]or over seven years, from approximately December 1998 through August 2006." Compl. ¶ 1. The alleged false representations--the failure to disclose Prince's officer status--were made in "seven annual reports" from 1999 through mid-2006 filed with the SEC on Forms 10-K or 10-KSB and "seven proxy statements" filed by Integral Systems from 2000 through mid-2006. Each of these filings, with the exception of the 1999 10-KSB, were allegedly reviewed and signed by Defendant Brown. <u>Id.</u> ¶¶ 32-35; <u>see also</u> <u>Howard v. Everex Sys., Inc.</u>, 228 F.3d 1057, 1061-62 (9th Cir. 2000) (allegation that corporate officer signed periodic filing containing misstatements with scienter suffices to plead liability as a primary violator of § 10(b)). Thus, the

Complaint sufficiently alleges what omissions were made and the time, place, and persons responsible for the omissions.

Next, the Complaint adequately pleads the way in which the alleged omissions misled the SEC, namely by concealing Prince's role as a de facto officer of the company from 1998 through 2006. The SEC alleges that, after being re-hired in 1998, Prince "became one of Chamberlain's closest advisors, preparing recommendations concerning annual salary increases and bonuses for all senior managers," as well as a member of a policy-setting group "of the most senior executive officers at Integral Systems, known at various times as the 'Group of Six' ('G-6') and 'Group of Seven' (or 'G-7')." Id. ¶ 23. He reported directly to the Chief Executive Officer of Integral Systems, appeared at the Executive Vice President level on internal organizational charts, and his office was located in the same area as company officers holding official titles. Id. ¶ 24.

In addition, the Complaint alleges that Prince was put in charge of Integral System's mergers and acquisitions program after being rehired. That position involved operational decision-making and a role as Director of Integral Systems's acquisition vehicle, ISI Merger Corporation, and a role as Chairman of the Board of Newpoint Technologies, Inc., an Integral Systems subsidiary. The Complaint further alleges that Prince regularly attended board of director meetings from 2000 to 2006, and that he became head of the

Contracts Department in 2005. Id. ¶¶ 26-27. Finally, the Complaint alleges that Prince's compensation was equal to that of the top officers holding official titles at Integral Systems from 1999 through 2005. Id. ¶ 28.

Given these allegations, the Court concludes that the Complaint adequately pleads sufficient facts to put Defendants on notice of the SEC's claims. While Defendant Brown may question whether the SEC will ultimately carry its burden to prove that Prince acted as an officer of Integral Systems throughout the period from 1998 until 2006, that will be for a jury to decide. "To comply with the requirements of Rule 9(b), a plaintiff does not need to recite the evidence or plead detailed evidentiary matters." McQueen v. Woodstream Corp., 248 F.R.D. 73, 78 (D.D.C. 2008) (internal quotation and citation omitted). Defendant Brown's Motion to Dismiss Counts I and II under Rule 9(b) is therefore **denied**.

### E. Failure to State a Claim for Relief Under Rule 12(b)(6)

Defendant Brown makes three arguments under Rule 12(b)(6). First, she argues that Count I fails to state a claim for violations of § 17(a) of the Securities Act, 15 U.S.C. § 77q(a), because it fails to allege that an offer or sale of securities ever occurred. Second, Brown argues that Count IV, which alleges violations of Exchange Act Rule 13a-14, 17 C.F.R. § 240.13a-14, fails to state a claim because the Rule does not set forth an independent cause of action. Finally, Brown argues that Count V,

alleging violations of Exchange Act § 14(a) and Rule 14a-9, fails
to allege essential elements of these claims.

In his Motion to Dismiss, Defendant Prince argues that Counts
I and II should be dismissed because the SEC has failed to allege
sufficient facts to establish his primary liability.

### 1. Count I, Alleging Violations of Section 17(a)

Defendant Brown argues that Count I fails to state a claim for
violations of § 17(a) of the Securities Act, 15 U.S.C. § 77q(a),
because it fails to allege that an offer or sale of securities ever
occurred. Section 17(a) provides that:

> It shall be unlawful for any person <u>in the
> offer or sale of any securities</u> . . . by the
> use of any means or instruments of
> transportation or communication in interstate
> commerce or by the use of the mails, directly
> or indirectly
>> (1) to employ any device, scheme, or
>> artifice to defraud, or
>> (2) to obtain money or property by
>> means of any untrue statement of a
>> material fact or any omission to
>> state a material fact necessary in
>> order to make the statements made,
>> in the light of the circumstances
>> under which they were made, not
>> misleading, or
>> (3) to engage in any transaction,
>> practice, or course of business
>> which operates or would operate as a
>> fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a) (emphasis added).

The Supreme Court has instructed that the "offer or sale"
requirement should be construed broadly so as to encompass fraud in
any part of the selling process. <u>See</u> <u>United States v. Naftalin</u>, 441

-24-

U.S. 768, 772-73, 99 S.Ct. 2077, 2081, 60 L.Ed.2d 624 (1979). As a result, "Section 17(a) has been broadly construed to encompass a wide range of conduct." <u>SEC v. Softpoint, Inc.</u>, 958 F.Supp. 846, 861 (S.D.N.Y. 1997) (collecting cases). Such conduct typically involves omissions and misstatements made in securities registration statements. <u>See</u>, <u>e.g.</u>, <u>SEC v. Leffers</u>, 289 Fed. Appx. 449, 451 (2d Cir. 2008). However, at least one district court has ruled that misstatements made in periodic filings, such as those underlying the SEC's claims in this case, suffice to state a claim under § 17(a) "where the company's securities are sold and purchased throughout the period at issue." <u>SEC v. Goldsworthy</u>, No. 06-cv-10012, Slip Op. at 19 (D. Mass. June 11, 2008).[6]

The SEC has failed to cite, and this Court has failed to identify, any precedent holding that a complaint may properly state a claim under § 17(a) when it fails to allege that an offer or sale

---

[6]     The SEC relies on <u>SEC v. Power</u>, 525 F.Supp.2d 415, 419-20 (S.D.N.Y. 2007), which states that "[a] public company and its management may violate [§ 17(a)] by making a material misstatement in, or omitting material information from, a periodic report, registration statement, or other filing with the Commission." This statement simply does not address the precise issue here, which is whether the mere filing of a required document with the SEC suffices to state a claim under § 17(a) absent a showing that securities were offered and sold in the same period. This omission is understandable, given that the issue was not raised in that case: the defendant in <u>Power</u> challenged the SEC's § 17(a) claim on the basis that the government had failed to allege scienter or his personal involvement in the fraud, and not on the ground that no offer or sale was alleged. Moreover, <u>Power</u>'s sole citation in support of this statement is <u>Softpoint</u>, 958 F.Supp. at 823-24, but <u>Softpoint</u> only discusses misstatements in registration statements, not periodic filings.

of securities ever occurred. See Naftalin, 441 U.S. at 772-73 (determining first that an offer or sale had occurred before considering whether defendant's fraud was "in" the offer or sale). The Complaint alleges only that Defendants made material omissions in seven annual reports and seven proxy statements, and that Integral Systems is a public company whose stock is traded on the public markets. Compl. ¶ 17. In the absence of any allegation that there was an offer or sale of Integral Systems's securities in the period between 1998 and 2006, during which the alleged fraud occurred, Count I fails to state a claim under § 17(a). Defendant Brown's Motion to Dismiss Count I is therefore **granted**.

### 2. Count IV, Alleging Violations of Exchange Act Rule 13a-14, 17 C.F.R. § 240.13a-14

Defendant Brown next argues that Count IV, which alleges violations of Exchange Act Rule 13a-14, 17 C.F.R. § 240.13a-14, fails to state a claim for relief because Rule 13a-14 does not set forth an independent cause of action. Brown relies first upon the language of Rule 13a-14, which states that "[e]ach report . . . filed on . . . Form 10-K . . . must include certifications in the form specified in the applicable exhibit filing requirements of such report . . . [and] [e]ach principal executive and principal financial officer of the issuer . . . must sign a certification."[7]

---

[7]     The certification must state that "[b]ased on [the certifying individual's] knowledge, the report does not contain any untrue statement of a material fact or omit to state a material
(continued...)

This language, Brown argues, does not prohibit or otherwise regulate individual conduct, and so it cannot be interpreted as establishing a separate cause of action. However, the Rule requires certain executives and officers to sign a certification, which quite clearly imposes a requirement on those individuals.

Second, Brown relies on an unreported opinion, <u>SEC v. Black</u>, No. 04-cv-7377, 2008 WL 4394891, at *16-17 (N.D. Ill. Sept. 24, 2008), which held that Rule 13a-14 does not establish a separate cause of action in an SEC enforcement proceeding. No courts appear to have followed <u>Black</u>'s logic or holding; indeed, SEC claims brought under Rule 13a-14 are routinely permitted. <u>See</u>, <u>e.g.</u>, <u>SEC v. Stanard</u>, No. 06-cv-7736, 2009 WL 196023, at *28 (S.D.N.Y. Jan. 27, 2009) (unreported opinion); <u>SEC v. Brady</u>, No. 05-cv-1416, 2006 WL 1310320, at *5 (N.D. Tex. May 12, 2006) (unreported opinion); <u>SEC v. Sandifur</u>, No. 05-cv-1631C, 2006 WL 538210, at *8 (W.D. Wash. Mar. 2, 2006) (unreported opinion); <u>but</u> <u>see</u> <u>SEC v. Retail Pro, Inc.</u>, 673 F.Supp.2d 1108, 1143 n.8 (S.D. Cal. 2009) (citing <u>Black</u> as evidence of a "conflict among courts at to whether a violation of the certification requirement of Rule 13a-14 supports a separate cause of action," which it declined to address).

---

[7](...continued)
fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by the report." 15 U.S.C. § 7241(a)(1), (2), (3).

In its discussion of Rule 13a-14, the <u>Black</u> court appears to have viewed the issue of whether the SEC may bring a claim under the Rule as analytically identical to the issue of whether a private plaintiff has an independent cause of action. The only caselaw relied on as authority for the court's holding consisted of two rulings that there was no right of action under Rule 13a-14 for claims brought by private investors.[8] <u>See</u> <u>Black</u>, 2008 WL 4394891, at *16 (relying upon <u>In re Intelligroup Sec. Litig.</u>, 468 F.Supp.2d 670, 706-07 (D.N.J. 2006), and <u>In re Silicon Storage Tech., Inc., Sec. Litig.</u>, No. C-05-0295, 2007 WL 760535 (N.D. Cal. Mar. 9, 2007) (unreported opinion)). However, the securities laws raise "distinct" statutory interpretation questions in private actions. <u>See</u>, <u>e.g.</u>, <u>SEC v. Kelly</u>, 545 F.Supp.2d 808, 813 (N.D. Ill. 2008).

<u>Black</u> does not address whether § 21(d)(1) of the Exchange Act, 15 U.S.C. § 78u(d)(1), enables the SEC to bring a claim under Rule 13a-14. Section 21(d)(1) authorizes the Commission to bring an action in a United States District Court "to enjoin" any "acts or practices constituting a violation of any provision of this title

---

[8] The <u>Black</u> court also relied on the SEC's press release accompanying the final rule, which stated that "[a]n officer providing a false certification potentially could be subject to Commission action for violating Section 13(a) or 15(d) of the Exchange Act and to both Commission and private actions for violating Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5," but not under Rule 13a-14 itself. <u>See</u> <u>Black</u>, 2008 WL 4394891, at *16; SEC Release No. 34-46427, 2002 WL 3170215, at *9 (Aug. 28, 2002). The Court is not persuaded that this one sentence in a press release forecloses the possibility of an independent cause of action under Rule 13a-14.

[or] the rules or regulations thereunder." 15 U.S.C. § 78u(d)(1); see also SEC v. Johnson, 595 F.Supp.2d at 43 (discussing authority to enjoin violations of securities laws under 15 U.S.C. § 78u(d)(1)). In light of this specific statutory authority, the Court concludes that the SEC's claim to enforce Rule 13a-14 states a valid cause of action. Defendant Brown's Motion to Dismiss Count IV under Rule 12(b)(6) is therefore **denied.**

### 3.   Count V, Alleging Violations of Exchange Act § 14(a) and Rule 14a-9

Defendant Brown next contends that Count V, which alleges that she aided and abetted violations of Exchange Act § 14(a) and Rule 14a-9, should be dismissed under Rule 12(b)(6) for failure to allege necessary elements of the claims. Section 14(a) makes it unlawful "for any person . . . in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy . . . ." 15 U.S.C. § 78n(a). Rule 14a-9 states that "no solicitation subject to this regulation shall be made by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9. Count V alleges that Brown and Prince aided and abetted violations

of § 14(a) and Rule 14a-9 when they prepared, reviewed, and approved materials in seven proxy statements filed by Integral Systems between March 2000 and March 2006 which failed to disclose Prince as an executive officer.

First, Brown argues that the SEC has failed to allege (1) an essential link between the purpose of the proxy statements and the alleged omission and (2) that the omission was material.[9] Second, Brown argues that the SEC has failed to allege which material information concerning Prince was omitted from the proxy statements, as well as which materials Brown prepared, reviewed, and approved. Def. Brown's Mot. to Dismiss at 31-32; Compl. ¶ 35.

It is well settled that a private plaintiff bringing a claim under § 14(a) or Rule 14a-9 must allege that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation . . . was an essential link in the accomplishment of the transaction."[10]

---

[9] Brown relies on the arguments advanced in Defendant Chamberlain's Motion to Dismiss. As noted earlier, Defendant Chamberlain was dismissed as a party in this case on February 18, 2010. Although Chamberlain's Motion to Dismiss was denied as moot by minute order dated August 11, 2010, the Court will consider the arguments concerning Count V in deciding Brown's Motion to Dismiss. See Def. Chamberlain's Mot. to Dismiss at 13-20 [Dkt. No. 11].

[10] No court appears to have addressed the specific issue of whether the SEC, as opposed to a private plaintiff, must prove injury when bringing a § 14(a) claim. The SEC argues that it is not required to do so because its enforcement actions are meant to protect the public interest in enforcing the securities laws, and so a showing of reliance or injury to private individuals is
(continued...)

Bender v. Jordan, 439 F.Supp.2d 139, 163 (D.D.C. 2006). Brown argues that the facts pled do not allege an "essential link" between the alleged misrepresentation or omission and "the subject of the proxy solicitation." Def. Chamberlain's Reply at 8; see also Def. Chamberlain's Mot. to Dismiss at 14-15 ("There must be a clear connection, that is – an 'essential link' between the alleged fraud in the proxy statement and the corporate transaction authorized by the proxy solicitation."); Def. Brown's Mot. to Dismiss at 32 (describing argument as concerning "the lack of an essential link between the purpose of a proxy and the alleged omission").

As the Supreme Court has explained, "[s]o long as the misstatement or omission was material, the causal relation between violation and injury is sufficiently established . . . if 'the

_____

[10] (...continued)
"legally irrelevant." Berko v. SEC, 316 F.2d 137, 143 (2d Cir. 1963) (finding reliance and injury to private shareholders "legally irrelevant" to Commission's Section 10(b) claim); see also United States v. Haddy, 143 F.3d 542 (3d Cir. 1998) (concluding that securities laws did not require proof of reliance in § 10b action brought by government); SEC v. Lucent Techs., Inc., 610 F.Supp.2d 349, 349 (D.N.J. 2009) ("Unlike a private litigant, the SEC need not prove either reliance or damages" in a § 10b and Rule 10b-5 action).

In response, Defendant Brown relies on two cases in which courts applied the test for private actions brought under § 14(a) and Rule 14a-9 to actions brought by the Commission. Def. Chamberlain's Reply at 9 (citing SEC v. Mercury Interactive LLC, No. C 07-2822, 2009 WL 2984769 (N.D. Cal. Sept. 15, 2009), and Black, 2008 WL 4394891, at *13). However, both Mercury and Black assumed without question that the elements for proxy violations applied in private actions would apply equally in actions brought by the SEC. As discussed, the question whether the SEC must prove injury in a § 14(a) action is not actually raised by Brown, and so it is not considered.

proxy solicitation itself . . . was an essential link in the accomplishment of the transaction.'" <u>TSC Industries, Inc. v. Northway, Inc.</u>, 426 U.S. 438, 444, 96 S.Ct. 2126, 2130, 48 L.Ed.2d 757 (1976) (quoting <u>Mills v. Electric Auto-Lite Co.</u>, 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970)). Thus, in a private action, the essential link element requires a causal connection between the proxy solicitation and the transaction that resulted in injury to the plaintiff. However, Defendant Brown does not argue that the Complaint fails to allege this causal connection. Instead, Brown incorrectly characterizes the connection between the alleged fraud and the subject of the proxy solicitation, which is the focus of her argument, as a required showing under the essential link element. In reality, the connection between the alleged omission and the subject or purpose of the proxy solicitation is essentially a question of materiality.

Brown's first argument is therefore reduced to the single question of whether the SEC has pled sufficient facts that the omission was material to the transactions which were the subject of the proxy solicitations. Under § 14(a), "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote" on the proxy solicitation. <u>Id.</u> at 449. Under Rule 12(b)(6), a complaint may not be dismissed on the ground that the alleged omission is not material "unless [it is] so obviously unimportant

to a reasonable investor that reasonable minds could not differ on the question of [its] importance." Ganino v. Citizens Utility Co., 228 F.3d 154, 162 (2d Cir. 2000) (citation omitted).

The Complaint alleges that "[f]rom 2000 through mid-2006, Integral Systems filed seven proxy statements to give notice of Integral Systems's annual meetings and to solicit for the election of directors." Compl. ¶ 35. Certainly, reasonable minds could differ as to whether Prince's officer status and legal background is "obviously unimportant" to shareholders who must decide whether or not to vote for Chamberlain or other directors involved in the decision to re-hire him.[11] Ganino, 228 F.3d at 162. The Court is therefore satisfied that Count V alleges a material omission under § 14(a) and Rule 14a-9.

Next, Brown argues that the SEC fails to allege specific facts in Count V regarding her role in aiding and abetting the alleged violations of § 14(a) and Rule 14a-9. The Complaint states that

---

[11] Brown relies on In re Browning-Ferris Industries Shareholder Derivative Litigation, 830 F. Supp. 361, 370 (S.D. Tex. 1993), which held that the prior criminal investigation of a corporate officer was not material to a proxy soliciting an election for the board of directors because there was no indictment or criminal conviction. In this case, Prince was convicted in a criminal proceeding. Brown's reliance on a separate portion of the opinion holding that pending civil lawsuits against directors facing re-election were not material because the lawsuits were not brought against those specific directors is distinguishable from the facts of this case. Moreover, the Browning-Ferris court also ruled that plaintiffs failed to allege any relationship between the pending civil lawsuits and the directors elected to the board during the relevant period of time. Id. at 367.

"Defendant[] Brown [] prepared, reviewed, and approved materials in the proxy statements, including the incorporated periodic reports, knowing that they did not identify Prince or disclose any of the required information concerning him," thereby providing "substantial assistance to . . . Integral Systems's and Chamberlain's violations of Section 14 and Exchange Act Rule 14a-9." Compl. ¶ 57. Brown's argument is that this allegation (1) fails to specify which information concerning Prince was required; (2) fails to specify which materials were prepared, reviewed, and approved by Brown; and (3) erroneously states that the periodic reports were incorporated into the proxy statements, when in fact they were merely included with them.

Liability for aiding and abetting a violation of the securities laws requires proof of "(1) a securities violation by a primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) substantial assistance by the aider and abettor in the primary violation." Treadway, 430 F.Supp.2d at 323; see also SEC v. DiBella, 587 F.3d 553, 565 (2d. Cir. 2009). Even assuming that the periodic reports were not incorporated into the proxy statements, the allegations in Count V specify that certain information regarding Prince, including his identity, were material and therefore were required to be disclosed in the proxy statements, and that Defendant Brown prepared, reviewed, and approved materials for use in the proxy statements with the

knowledge that this required information was omitted. This suffices to state a claim for aiding and abetting violations of § 14(a) and Rule 14a-9. Defendant Brown's Motion to Dismiss Count V is therefore **denied.**

### 4. Failure to State a Claim for Primary Liability

Finally, Defendant Prince moves to dismiss Counts I and II against him on the basis that the SEC has failed to allege his primary liability for violations of the securities laws. Because Count I, alleging violations of § 17(a), is dismissed in its entirety for failure to allege that an offer or sale of Integral Systems's securities ever occurred, the Court will only consider Defendant Prince's arguments as they relate to Count II, alleging violations of § 10(b) and Rule 10b-5.

Section 10(b) "prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act"; it does not provide a cause of action against those who only aid and abet such acts.[12] <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164, 177, 114 S.Ct. 1439,

---

[12]    The SEC could have brought an action against Prince as a secondary actor for aiding and abetting violations of § 10b and Rule 10b-5 under 15 U.S.C. § 78t(e). <u>See</u> <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta</u>, 552 U.S. 148, 166, 128 S.Ct. 761, 773-74, 169 L.Ed.2d 627 (2008) (discussing SEC's power to enforce securities laws against secondary actors). However, it failed to do so; Count II only alleges primary violations of § 10b and Rule 10b-5. Compl. ¶¶ 43-45.

1448, 128 L.Ed.2d 119 (1994). Primary liability under § 10(b) may be found for any person who:

> directly or indirectly, by the use of any
> means or instrumentality of interstate
> commerce or of the mails, or of any facility
> of any national securities exchange ... use[s]
> or employ[s], in connection with the purchase
> or sale of any security ... any manipulative
> or deceptive device or contrivance in
> contravention of such rules and regulations as
> the Commission may prescribe as necessary or
> appropriate in the public interest or for the
> protection of investors.

15 U.S.C. § 78j. On the basis of this statute, the SEC promulgated Rule 10b-5, which makes it unlawful for:

> any person, directly or indirectly, . . . (a)
> [t]o employ any device, scheme, or artifice to
> defraud, (b) [t]o make any untrue statement of
> a material fact or to omit to state a material
> fact necessary in order to make the statements
> made, in the light of the circumstances under
> which they were made, not misleading, or (c)
> [t]o engage in any act, practice, or course of
> business which operates or would operate as a
> fraud or deceit upon any person, in connection
> with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

First, Prince argues that any claim under Rule 10b-5(b) must fail because the Complaint fails to allege that he "made" any material misstatement or omission or, alternatively, that he had a duty to disclose or clarify any alleged material omission made by Integral Systems. Second, Prince argues that the Complaint fails to state a claim for "scheme liability" under Rule 10b-5(a) and (c)

because there are no allegations that Prince committed any manipulative or deceptive acts.

### a. Rule 10b-5(b)

The Complaint alleges that Prince was responsible for drafting and preparing the Management Discussion and Analysis section of Integral Systems's periodic reports filed with the SEC, addressing the company's financial results for that period. Compl. ¶ 39. Prince is also alleged to have created and prepared internal quarterly financial results and forecasts which were incorporated into the periodic reports. Id. Finally, Prince allegedly reviewed, commented on, and approved Integral Systems's draft annual reports and proxy statements. Id. ¶ 35. Prince argues that these allegations fail to state a claim for primary liability under Rule 10b-5(b) because they do not show (1) that he made any material misstatement or omission or (2) that he had a duty to disclose or clarify any material omission by Integral.

Three tests for primary liability have emerged in different circuits. The "bright-line approach" is the most demanding of the three approaches. See SEC v. May, 648 F.Supp.2d 70, 77 (D.D.C. 2009) (discussing approaches to primary liability under securities laws). Under the bright-line approach, a defendant in a private action may be held primarily liable under § 10b and Rule 10b-5 only if he or she actually makes a false or misleading statement and the statement is attributed to the defendant at the time of its

dissemination. Id. The least demanding approach is called the "substantial participation" approach, which requires a showing that a defendant substantially participated or was intricately involved in making a material misstatement or omission. See Howard v. Everex Sys., Inc., 228 F.3d 1057, 1061 n.5 (9th Cir. 2000). The middle approach--called the "creation" test--requires a secondary actor to have "created" the misrepresentation or omission. SEC v. Wolfson, 539 F.3d 1249, 1259 n.16 (10th Cir. 2008). This Circuit has not yet adopted one of the three approaches to primary liability for the securities laws.

Prince urges this Court to adopt the "bright-line" approach to determining primary liability, which, as noted, is the strictest of the three approaches. See Wright v. Ernst & Young, LLP, 152 F.3d 169, 175 (2d Cir. 1998). Prince argues that, under the "bright-line" approach, the SEC must plead that Prince made a statement or omission, and that the statement or omission was attributed to him at the time of its dissemination to the public.

Attribution is required under the "bright-line" approach in private actions because a private plaintiff, unlike the SEC, must prove that he or she relied on the defendant's statements in order to state a claim. See id. at 175; May, 648 F.Supp.2d at 77. The Second Circuit, which introduced the attribution requirement, has not directly addressed whether it should apply in actions brought by the SEC. However, other Circuits have rejected the attribution

requirement in SEC actions as irrelevant because reliance need not be proven. See, e.g., SEC v. Tambone, 597 F.3d 436, 447 n.9 (1st Cir. 2010); Wolfson, 539 F.3d at 1260.

In addition, as the SEC points out, even the Second Circuit has not consistently required in suits by a private plaintiff that misstatements be attributed to the defendant for primary liability to attach. See, e.g., In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 75-76 (2d Cir. 2001) (finding primary liability for corporate insider who was "involved in drafting, producing, reviewing and/or disseminating of the false and misleading statements," even though statements not specifically attributed to him).

However, district courts in the Second Circuit have directly addressed the issue, and have rejected the attribution requirement in actions brought by the SEC. In one such case, the court explained that "in an SEC enforcement action, there appears to be no reason to impose a requirement that a misstatement have been publicly attributed to a defendant for liability to attach, at least so long as the SEC is able to show that the defendant was sufficiently responsible for the statement--in effect, caused the statement to be made--and knew or had reason to know that the statement would be disseminated to investors." SEC v. KPMG, LLP, 412 F.Supp.2d 349, 375 (S.D.N.Y. 2006); see also SEC v. Richitelli, No. 3:09-cv-361, 2010 WL 2802911, at *5 (D. Conn. July 12, 2010); SEC v. Collins & Aikman Corp., 524 F.Supp.2d 477, 490 (S.D.N.Y.

2007); <u>SEC v. Forman</u>, No. 07-cv-11151, 2008 WL 2704554, at *2 n.3 (D. Mass. July 7, 2008) (unreported opinion); <u>SEC v. Hopper</u>, No. Civ.A. H-04--1054, 2006 WL 778640, at *9 (S.D. Tex. March 24, 2006) (unreported opinion).

Thus, the majority of courts which have directly addressed the issue have concluded that attribution is not required under the "bright-line" approach in actions brought by the SEC.[13] Even assuming the application of the strictest approach is proper, the SEC, as plaintiff, need only show that Prince was sufficiently responsible for the statement and knew or had reason to know the statement would be disseminated to investors. <u>KPMG, LLP</u>, 412 F.Supp.2d at 375.

As discussed above, the Complaint alleges that Prince was responsible for drafting and preparing portions of Integral Systems's periodic reports dealing with the company's financial results and forecasts, and that he also reviewed, commented on, and approved the company's draft annual reports and proxy statements. Compl. ¶¶ 35, 39. Prince correctly argues that the allegations that

---

[13] The only exception cited by Prince is <u>Lucent Technologies</u>, 610 F.Supp.2d 342. However, the court in <u>Lucent Technologies</u> was tasked with determining whether it should depart from the law of the case by rejecting the attribution requirement, which it had previously applied in the case at bar. The court ultimately refused to impose primary liability for violations of the securities laws on the basis that the defendants did not draft or sign the filings, and so could not be said to have "made" the misstatements allegedly contained within them. <u>Lucent Techs.</u>, 610 F.Supp.2d at 355-58.

he prepared or drafted Integral Systems's internal financial results and forecasts fail to state a claim for primary liability, even if those forecasts were later incorporated into the company's periodic filings, because the SEC does not allege that there were any misstatements concerning the company's finances. Prince's Mot. to Dismiss at 11.

However, the Complaint also alleges that Prince generally reviewed, commented on, and approved Integral Systems's periodic filings and proxy statements but failed to correct the omission of his status as an officer of the company and of his holdings and transactions in the company's securities. This allegation, if proven, would establish that Prince was sufficiently responsible for the omission[14] under the "bright-line" approach. Because the allegations state a claim under the "bright-line" approach, which requires a showing that the defendant actually made a statement or

---

[14]    In SEC v. Berry, 580 F.Supp.2d 911, 922 (N.D. Cal. 2008), the district court found similar conclusory pleadings that the defendant corporate officer "reviewed," "discussed," and "finalized" various filings insufficient to plead primary liability for the defendant's role in the misstatement made in the filings. In this case, however, the SEC alleges that Prince "approved" Integral Systems's periodic filings despite the omissions contained therein, in addition to merely reviewing and commenting on them. This additional allegation indicates more substantial responsibility for preparing the filings. See id. (recognizing that substantial involvement in preparing a fraudulent statement supports a claim for securities fraud); cf. Howard v. Everex Systems, Inc., 228 F.3d 1057, 1061 (9th Cir. 2000) (fact that defendant signed document containing fraudulent statement is sufficient to conclude that defendant "made" misstatement, even if he was not involved in drafting the document).

omission, they also state a claim under the less strict "substantial participation" or "creation" approaches. Prince's Motion to Dismiss therefore fails under all three approaches. Consequently, the Court need not decide which standard applies in this Circuit.

Prince argues that Count II still fails to state a claim, however, because the SEC has failed to allege that he had a duty to disclose the omitted information. As discussed, the facts alleged in the Complaint establish that Prince "made" a statement under Rule 10b-5 when he reviewed, commented on, and approved Integral Systems's periodic filings. Under Rule 10b-5, an individual who "makes" a statement has a duty to correct "any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5. Thus, Prince had a duty to correct the omissions in the periodic reports and proxy statements which he was substantially involved in preparing. See also SEC v. Druffner, 353 F.Supp.2d 141, 148 (D.Mass. 2005) ("[T]he securities laws give rise to a duty to disclose any information necessary to make an individual's voluntary statements not misleading.").[15]

---

[15]     Prince relies on SEC v. Tambone, 417 F.Supp.2d 127, 135 (D.Mass. 2006), a case decided under the "bright-line" approach for primary liability, as authority for the principle that an individual only owes a duty to correct an omission if the statement containing the omission is attributed to the individual. However, the court in Tambone concluded that the defendants had no duty to
(continued...)

In summary, the Complaint alleges sufficient facts to establish that Prince made a statement and, therefore, that he had a duty to correct any misleading omissions in that statement. Prince's Motion to Dismiss the SEC's Rule 10b-5(b) claim is therefore **denied.**

### b. Rule 10b-5(a) and (c)

In addition to the Rule 10b-5(b) claim for Prince's alleged omissions, the SEC argues that Prince is liable under Rule 10b-5(a) and (c) for, respectively, employing a "device, scheme or artifice to defraud," and engaging in an "act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5. Prince argues that the SEC has failed to state a claim for such "scheme liability" under Rule 10b-5(a) and (c) because (1) it has not alleged that he engaged in a manipulative device or contrivance; and (2) the scheme allegations merely reiterate the omissions underlying the Rule 10b-5(b) claim. Prince's Mot. to Dismiss at 14-15.

It is certainly true, as Prince argues, that Section 10(b) "prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act." <u>Central Bank</u>, 511 U.S. at 177. However, an individual's participation in a scheme to defraud

---

[15](...continued)
correct the omission because the statement--prospectuses which were prepared by a separate entity--had not been made by them, and not because the statement was made by them but not publicly attributed to them.

may result in primary liability even in the absence of a misstatement or manipulative act if the individual "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." Simpson v. AOL Time Warner Inc., 452 F.3d 1040, 1048 (9th Cir. 2006), vacated on other grounds, Avis Budget Group, Inc. v. Cal. State Teachers' Ret. Sys., 552 U.S. 1162, 128 S.Ct. 1119, 169 L.Ed.2d 945 (2008).

However, to establish primary liability under Rule 10b-5(a) or (c), the alleged conduct must be more than a reiteration of the misrepresentations underlying the Rule 10b-5(b) misstatement claims. Lucent Techs., 610 F.Supp.2d at 361. Primary liability may arise out of the same set of facts under all three subsections "where the plaintiffs allege both that the defendants made misrepresentations in violations of Rule 10b-5(b), as well as that the defendants undertook a deceptive scheme or course of conduct that went beyond the misrepresentations." In re Alstom SA, 406 F.Supp.2d 433, 475 (S.D.N.Y. 2005).

The Complaint's sole allegation that Prince engaged in deceptive conduct, apart from his alleged involvement in the filing of fraudulent and misleading annual reports and proxy statements, is that he violated § 16(a) of the Exchange Act, 15 U.S.C. § 78p(a), by failing to file the statements required under that section. Section 16(a) requires anyone "who is a director or an officer of the issuer of [any equity] security" to file a statement

concerning any holdings and transactions of the issuer's securities. 15 U.S.C. § 78p(a).

As Prince points out, in order to prove this claim, the SEC must first establish that he was, in fact, an officer of Integral Systems. Assuming as we must in a Motion to Dismiss that the SEC does establish that Prince did act as an officer of Integral Systems with scienter, a reasonable fact finder could conclude that his failure to file the reports required under § 16(a) was done with the purpose and effect of concealing his officer status from the public. See In re Alstom SA, 406 F.Supp.2d at 474 ("[S]ubsections (a) and (c) of Rule 10b-5 encompass a wide range of activities and are not limited to the prohibition of market manipulation."). The SEC's allegations therefore state a claim under Rule 10b-5(a) and (c) for scheme liability, and Prince's Motion to Dismiss is **denied**.

## CONCLUSION

For the reasons set forth above, Defendant Brown's Motion to Dismiss Count I is **granted**, and the remainder of her Motion to Dismiss is **denied** in all other respects. Brown's Motion to Dismiss under the statute of limitations in 28 U.S.C. § 2462 is **denied**

**without prejudice**. Defendant Prince's Motion to Dismiss is **denied** in its entirety. An Order will accompany this Memorandum Opinion.


September 27, 2010

/s/_____
Gladys Kessler
United States District Judge

<u>Copies to</u>: attorneys on record via ECF