REBUTTAL REPORT OF LYNN E. TURNER

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

v.

ELAINE M. BROWN

and

GARY A. PRINCE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Case Number: 1:09-cv-01423

## Scope of Engagement and Assignment

1. I have been retained by the United States Securities and Exchange Commission ("SEC" or "Commission") to provide opinions regarding the activities of Gary A. Prince ("Prince") related to the accounting and public filings completed by Integral Systems, Inc. ("ISI" or "Company") from 1998 through 2005.  My opinions related to these issues are the subject of my expert report issued October 14, 2011 (my "October 14 Expert Report").

2. I have read and analyzed the Expert Report of Professor Jonathan R. Macey dated October 14, 2011 ("Macey Report") and related supporting information.  I have formed additional rebuttal opinions as a result of that work.

3. I incorporate the Scope of Engagement and Assignment, Qualifications and Expertise, and Background and Facts included in my October 14 Expert Report by reference.

4. Since the issuance of my October 14 Expert Report, I have provided deposition testimony in the matter of *Fairfax Financial Holdings Limited and Crum & Forster Holdings Corp. v. S.A.C. Capital Management, LLC, et al.*, (Superior Court of New Jersey – Law Division: Morris County).

## Information Considered

5. The additional information I considered while preparing this rebuttal report is listed in the attached Turner Rebuttal Exhibit 1.

## I.   Summary of Rebuttal Opinions

6. The main opinion offered in the Macey Report, that Gary Prince did not engage in the practice of accounting before the SEC, is incorrect and is not supported by the available facts and information.

7. The opinions offered in my October 14 Expert Report have not changed and are incorporated by reference.

## II.    Opinion Offered by Professor Jonathan R. Macey

8.    The main opinion provided in the Macey Report is that Mr. Prince did not practice accounting before the SEC.  The Macey Report states:

> In sum, the evidence I have reviewed leads me to conclude that Mr. Prince did not engage in the practice of accounting before the SEC as that term is generally understood by practitioners, academics, or industry experts.[1]

9.    This statement is not consistent with or supported by the available facts.  While this issue is addressed in my October 14 Expert Report, I provide additional information and analysis within this document to rebut opinions and information offered by Professor Macey.

## III.   Appearing or Practicing before the Commission as an Accountant

10.   In order to determine whether or not Mr. Prince was "appearing or practicing before the Commission as an accountant" in violation of the Commission's 1997 Order permanently barring Mr. Prince from doing so, it is necessary to clearly understand and define the roles, responsibilities, and activities typically associated with accountants, accounting, and appearing or practicing as an accountant before the Commission.  In my opinion, Professor Macey fails to adequately provide a basis for his definition of accounting, makes an incorrect distinction between management and accounting functions, and defines the work of accountants and accounting far too narrowly.

### Who is an Accountant?

11.   As discussed in my October 14 Expert Report, and based on my experience as an accountant for more than three decades, accountants fill a wide variety of roles and

---

[1] Expert Report of Professor Jonathan R. Macey, ¶18.

responsibilities related to financial reporting.  Accountants serve in positions both internal and external to businesses related to preparing or advising on financial statements and financial reporting.  Internal roles include positions and responsibilities such as: CFO, Controller, Managerial Accounting, Internal Audit, Financial Reporting, and Audit Committee members.  The accountant may serve in a senior managerial role, such as the CFO or Controller, or may be in a line role such as an accounts receivable accountant.  Positions external to businesses include roles such as: Independent Auditors, Tax Accountants, and Management Consultants.

12. In filling these varied roles, accountants perform a wide range of tasks.  Some of these include: financial analysis; writing descriptions of business operations, transactions, and results; researching accounting literature; making significant business decisions regarding accounting treatments; entering information into financial reporting systems; managing cash flows; generating and using information to improve operations and efficiency; interacting with the investing public; auditing financial statements; and advising clients.

13. The preparation of financial statements (and the SEC filings into which they are incorporated), is not performed simply by the CFO or Controller, but rather by a team of accountants.  Each participant can play an important part in the process and the internal controls necessary to ensure the integrity and credibility of the financial reports.  This includes the company's staff accountants who process daily, weekly or monthly transactions, such as sales transactions leading to reporting of revenues, or recording of potential bad debts from the resulting customer accounts receivable.  It also includes supervisors who oversee their work, and who review the reconciliations of the daily activity with the amounts that are recorded and summarized in various journals.  Budget and cost accountants can also play an important role with respect to preparation of financial statements as they are involved in costing products or services which impact costs of goods or services in financial statements and the related gross profit margins.

14. Preparing financial statements, and overseeing the operations of a business, require the use of judgment.  Without judgments regarding potential losses on contracts, lives of fixed assets, amortization periods for intangibles, or key assumptions necessary for recording the proper expense for stock options or pensions, financial statements could not be prepared in accordance with generally accepted accounting principles.  And in all my years experience as a CPA, CFO, regulator, chair of audit committees and professor of accounting, I have found these judgments are not "made in a vacuum." Rather they are typically made with input from several of those involved with accounting for the transactions, including members of the accounting team who provide their views and counsel on the proper reporting of the transactions.

15. Those involved with the preparation of financial reports, such as the CFO, Controller or Director of Financial Reporting utilize the information prepared by others in the various accounting functions when preparing financial reports as well as Management's Discussion & Analysis (MD&A).  Often the information coming from the periodic accounting transactions, processes and controls are critically important to an understanding of the financial statements, the disclosures therein, as well as trends in the results, operations and liquidity of the business.  Accordingly, individuals involved with the recording of transactions, reconciliations, preparations of various journals and general ledger, those who manage and supervise those individuals, and those who have input into critical judgments and accounting policies all are integral to the process of preparing financial reports submitted to the SEC.

**What is Accounting?**

16. As described in greater detail in my October 14 Expert Report, individuals with the responsibility to, or who actually, materially affect financial statements or related disclosures are involved in the practice of accounting.  If such financial statements and related disclosures are public documents filed with the SEC, then these individuals are practicing accounting before the SEC.

## IV.   Mr. Prince's Activities and Responsibilities at ISI:

17.   In evaluating Professor Macey's opinions, it is important to understand the work that Mr. Prince actually did for ISI.  The Macey Report includes the following statements:

> But I am not aware of any evidence that Mr. Prince ever provided numbers for inclusion in ISI's public filings, made substantive accounting determinations in connection with the preparation of ISI's public filings, or made determinations regarding the accuracy and appropriateness of ISI's public filings.[2]

> I am aware of no evidence indicating Mr. Prince ever made any final accounting judgments or determined the appropriateness or accuracy of any financial records.  All accounting judgments and determinations were left to ISI's professional accounting staff.[3]

18.   Various examples contained in my October 14 Expert Report show that available information contradicts these statements.  Mr. Prince filled a variety of accounting roles and responsibilities within ISI.  His work included: preparing Public Filings and Press Releases; assisting with Accounting and Financial Statements; drafting the Management Discussion and Analysis; completing or reviewing Defense Contract Audit Authority Cost Submissions; interacting with Auditors; and, participating in Board meetings, among other areas.  These examples and others provided in my October 14 Expert Report describe Mr. Prince's activities and show that he was involved in ISI's accounting.

19.   An additional example of Mr. Prince's direct involvement with ISI's accounting activities and public financial reporting is provided in an October 2000 email from Mr. Prince to Elaine Parfitt (CFO of ISI).  This correspondence describes his significant involvement related to finalizing the audits of various financial statements of SAT, a company acquired by ISI.  Mr. Prince's email states:

---

[2] Expert Report of Professor Jonathan R. Macey, ¶18.
[3] Expert Report of Professor Jonathan R. Macey, ¶38.

I will also challenge you to find anyone in this Company, including yourself to get the historical audit completed as I did thru this last trip and the one before.  After spending $60,000, all SAT could do on its own was get a balance sheet audit for one year.  My efforts will result in a full audit for the years ended 9/30/98 and 9/30/99, a feat that SRC was so fearful would not get done, that we almost did not do this deal.

I have worked on this audit singlehandedly without support from you or anyone on your staff.  SAT is getting the bargain of the century for 38 hours of my time for the payperiod ending 9/30/00.

Not only did I more than work the hours claimed on their behalf, but I achieved the results that were desired.[4]

20.    Mr. Prince's own description of his actions and responsibilities related to overseeing and facilitating the completion of the audits of the SAT financial statements explicitly shows that he was involved in the practice of accounting.

21.    Additionally, deposition testimony of Elaine (Parfitt) Brown confirms that Mr. Prince's work on the SAT financial statements was incorporated into ISI's financial statements.

Q: … I'm just trying to get a sense of what is his involvement, what this refers to.

We saw an exhibit earlier that reflected his involvement in the due diligence on an acquisition.  Does this reflect Mr. Prince's similar involvement in the SAT acquisition or is this different?

A: This, if I'm understanding it correctly, this looks as though the acquisition was done using the pooling method of accounting when that was still allowed, and we had to go back historically to consolidate their historical data with our historical data.  And I think it was going back to 1998 and 1999 at SAT.

And if I remember correctly, they didn't have the same year that Integral Systems had – SAT didn't have the same fiscal year as Integral Systems did.  And I don't know that they tracked data quarterly, and we needed quarterly data.

---

[4] Email from Gary Prince to Elaine Parfitt, Subject: RE: SAT, dated October 2, 2000 (Exhibit 112).

So if I'm remembering correctly, there **was a lot of work to do with the SAT accounting department and getting that historical data in such a fashion that Integral could use it in their financial results.**[5] (emphasis added)

22.   I have also identified an e-mail and response written by Mr. Prince in October 2004 that shows his involvement in ISI's accounting.  In the correspondence, Mr. Prince states "Now that I'm running the Accounting Dept.,;) I have some questions/requests re: the Q4 numbers:"  His e-mail continues and lists ten questions.  Al Smith (ISI Assistant Controller) replies and states, "GAP – we never know that you weren't running the accounting department.  See below for responses."  Mr. Prince replies with "I'm just running it this qtr. only."[6]

23.   These examples clearly show that Mr. Prince was involved in ISI's accounting and financial reporting.  As a result, Professor Macey's assertions that Mr. Prince was not involved with ISI's accounting are not correct and are contradicted by the available facts and information.

## V.   Opinions Offered by Venable Law Firm

24.   Professor Macey incorrectly asserts that: 1) the Venable law firm analyzed Mr. Prince's bar from appearing or practicing as an accountant before the Commission at the time Mr. Prince was rehired by ISI in December 1998; and 2) ISI structured Mr. Prince's roles and activities to comply with the bar order.[7]  Professor Macey further asserts, incorrectly, that the "Venable firm and ISI's directors expressed the opinion that Prince's activities did not violate the 1997" bar from appearing or practicing as an accountant before the Commission.[8]

---

[5] SEC Deposition Testimony of Elaine M. Brown, September 13, 2007, pp. 304:20 to 305:15.
[6] Email from Gary Prince to Al Smith, Pat Carey, Subject: RE: Q4 Questions, dated October 27, 2004 (Exhibit 36).
[7] Expert Report of Professor Jonathan R. Macey, ¶20.
[8] Expert Report of Professor Jonathan R. Macey, ¶22.

25.   It appears that Professor Macey's analysis and conclusions mischaracterize the
      testimony and documents he references as support.  In addition, it appears that
      Professor Macey does not consider other available evidence that directly contradicts
      his incorrect assertions.

26.   As support for his opinion, Professor Macey significantly relies upon Mr.
      Chamberlain's 1998 statements that he consulted with Venable regarding Prince's role
      before bringing Prince onboard.  However, the deposition testimony referenced by
      Macey shows that Mr. Chamberlain's focus and main concern was that he did not
      want to have Mr. Prince considered an officer of ISI.  It appears that this is because if
      Mr. Prince were an officer of ISI, the Company would have been required to disclose
      that Mr. Prince had previously pled guilty to felony charges.[9]

27.   Moreover, Professor Macey cites testimony that Mr. Chamberlain spoke with Venable
      attorney John Sullivan about Mr. Prince's prohibition from appearing or practicing as
      an accountant at the time Mr. Prince was rehired in 1998.[10]  Mr. Sullivan's testimony
      directly contradicts Mr. Chamberlain's position.  Mr. Sullivan testified that he did not
      learn that Mr. Prince was barred from appearing or practicing as an accountant before
      the Commission until after 2006, as a result of the SEC investigation.[11]  Mr. Sullivan's
      testimony is consistent with the absence of analysis or documentation, prepared by ISI
      or Venable, evaluating whether Mr. Prince was violating the accounting bar during the
      period from 1998 through 2005.  The information cited by Professor Macey does not
      support his position that, with Venable's assistance, ISI structured Mr. Prince's
      employment to ensure that Mr. Prince did not appear or practice as an accountant
      before the Commission.

---

[9] Expert Report of Professor Jonathan R. Macey, ¶20 *citing* SEC Deposition of Steven R. Chamberlain, July 11, 2007, pp. 46:24 to 51:8.
[10] Expert Report of Professor Jonathan R. Macey, ¶20 *citing* SEC Deposition of Steven R. Chamberlain, July 11, 2007, pp. 46:24 to 51:8 (at pp. 48:15 to 49:12).
[11] Deposition of John Sullivan, May 25, 2011, pp. 29-31.  John Sullivan was Venable's main point of contact for ISI until he left Venable in 2001 (Deposition of John Sullivan, May 25, 2011, pp. 17, 23-26).

28.   Separately, Professor Macey asserts that Venable firm and ISI's directors expressed
      the opinion that Prince's activities did not violate the accounting bar.  However, the
      Venable email[12] and Board minutes[13] cited by Professor Macey were prepared in 2006
      and lack an informed, independent analysis or assessment of Mr. Prince's activities.  In
      fact, neither piece of this documentation was prepared during the 1998 through 2005
      time period relevant to the analysis of Mr. Prince's activities.[14]

29.   Furthermore, Venable attorney Treazure Johnson signed an August 2006 letter from
      the firm to the SEC advocating on behalf of Mr. Prince and describing a limited role at
      ISI for Mr. Prince.  In her 2011 deposition, Ms. Johnson testified that she signed the
      letter arguing for Prince's limited role even though she had not ever individually
      interviewed Mr. Prince.

      Q.     Did you ever interview Mr. Prince?
      A.     No.
      Q.     Have you ever met with Mr. Prince?
      A.     No.[15]

30.   Ms. Johnson also did not verify the facts in the documents she relied upon.

      Q.     I guess turning your attention to, I think, Exhibit 164, which should
      be in the file of exhibits from today, which is the Gary A. Prince My Role
      At ISI memo --
      A.     Okay.
      Q.     -- what steps, in any, did you take to verify the accuracy of the
      statement in that document?
      A.     I took no steps.
      Q.     Do you know if anyone else at Venable took any steps to verify
      the accuracy of the information in that document?
      A.     I don't know.

---

[12] Email from Wallace E. Christner to dmccomas@cybercommunitys.com, dated April 24, 2006, Subject:
PRIVILEGED AND CONFIDENTIAL (Exhibit 24).
[13] Minutes of ISI Board of Directors meeting, August 7, 2006 (Exhibit 7).
[14] Email from Wallace E. Christner to dmccomas@cybercommunitys.com, dated April 24, 2006, Subject:
PRIVILEGED AND CONFIDENTIAL (Exhibit 24).
[15] Deposition of Treazure Johnson, May 18, 2011, p. 147:12-15.

> Q.      Did that document form the basis or part of the basis for the information that is contained in your letter of August 14, 2006, to the SEC?
>
> A.      Yes.
>
> Q.      And at the time you signed that letter and sent it to the SEC, you believe that the representations in that letter were correct?
>
> A.      Yes.
>
> Q.      And you said that you subsequently came to the view that, in fact, those representations were not correct?
>
> A.      Yes.
>
> Q.      And can you tell me why that is?
>
> A.      Because Lisa Wood, who was representing Integral, brought to my attention an e-mail that had been prepared at some point by Mr. Prince that described his significance to the company and the importance of his role in what he did, and it was inconsistent -- it described a role that was different from the role that I was aware of at the time I wrote the letter in August of 2006.
>
> Q.      And different from the role portrayed in Exhibit 164?
>
> A.      Yes.[16]

31.   During her deposition, Ms. Johnson also testified that ISI had not been cooperative and forthcoming with Venable regarding Mr. Prince's actual activities.

> Q.      To your knowledge, did anyone at Integral refuse to be cooperative with Venable with respect to the -- Venable's representation of Integral in the SEC inquiry?
>
> A.      Up to -- at any time to what period of time?
>
> Q.      Well, let's say through August 15, 2006.
>
> A.      No.
>
> Q.      Okay.  How about after that point in time?
>
> A.      I -- in my opinion -- in my opinion, the subsequent e-mail that Gary Prince sent was inconsistent with, for instance, the memo he had provided.  And I don't know that -- in my mind, that's not complete cooperation, I guess.[17]

32.   Ms. Johnson testified that she would have concluded that Mr. Prince had violated the prohibition from appearing or practicing as an accountant before the Commission if

---

[16] Deposition of Treazure Johnson, May 18, 2011, pp. 170:5 to 171:20.
[17] Deposition of Treazure Johnson, May 18, 2011, pp. 139:12 to 140:3.

she had been given access to information that was not provided to her, such as a document in which Mr. Prince describes various activities he performed at ISI.

> Q.      Are you aware of any evidence in 2006 when you were representing Integral that Mr. Prince was violating his accounting bar?
> A.      I don't -- I can't recall the time lines.  That e-mail that we discussed a few moments ago, I can't remember the time -- when it was written and what period of time the conduct was occurring in.  But if that -- if the conduct described in the -- the activities described in that e-mail occurred in 2006, then at that point, I would have felt that was evidence that he was violating his accounting bar.
> Q.      Okay.  So it's your testimony that this e-mail that you haven't seen for quite some time constitutes evidence that Mr. Prince was violating his accounting bar?
> A.      My recollection of the e-mail is that it described him having a very significant role, in my opinion, yes. [18]

33.    In summary, Professor Macey's assertions that the Venable firm evaluated Mr. Prince's roles and responsibilities within ISI, understood that information, and offered an informed opinion that Mr. Prince was not violating his bar from practicing or appearing as an accountant before the Commission is not consistent with the facts.

## VI.    Discussion of *In re Robert W. Armstrong, III* and *In re Jerry M. Walker, CPA*

34.    Professor Macey's report attempts to diminish the significance of *In re Robert W. Armstrong, III* and *In re Jerry M. Walker, CPA* by highlighting the fact that these two matters were related to the manipulation of financial statements.  Professor Macey asserts that this is "a far cry from Mr. Prince's situation."[19]

35.    The question at issue is not whether Mr. Prince was involved in manipulating the financial records of ISI.  It is an established fact that Mr. Prince had previously manipulated financial records, which resulted in his permanent bar.  The issue is

---

[18] Deposition of Treazure Johnson, May 18, 2011, pp. 150:8 to 151:3.  The email discussed in this exchange is from Mr. Prince, dated November 9, 2005, Subject: RE: Compensation Committee Comments Regarding Bonuses for 2005.  It was referenced in my October 14 Expert Report and has been identified as Exhibit 48 and Exhibit 153.
[19] Expert Report of Professor Jonathan R. Macey, ¶41.

whether Mr. Prince appeared or practiced as an accountant before the Commission. The matter *In re Robert W. Armstrong, III* (as well as the matter *In re Jerry M. Walker, CPA*) provides relevant guidance as to the activities that constitute practicing before the Commission, separate from whether those activities included the fraudulent manipulation of financial statements.

## VII.    Expertized Portions of Financial Statements

36.    Professor Macey's report states that "audited financial statements are considered expertized portions of a registration statement."[20]  He continues and makes the distinction that "sections such as the MD&A are considered 'non-expertised.'"[21]

37.    Professor Massey appears to argue that only those sections of SEC filings that are subject to the independent auditors being "expertised" are prepared by accountants practicing before the Commission.  This is incorrect as it relates to external expert accountants such as independent auditors, as further discussed in Regulation S-K, Item 509, *Interests of named experts and counsel* and Item 601, *Exhibits*.  Those experts are not the internal accountants who actually participate in the preparation of the financial statements and SEC filings.

38.    The CFO of a company, as its principal financial officer, is required by Section 302 of the Sarbanes Oxley Act of 2002 to certify each annual and quarterly report filed with the SEC.  That certification provides a broad statement which states that the CFO has read the report, and that based on his or her knowledge, the report filed with the SEC does not contain any untrue statement of material fact or omit a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report.  The CFO also certifies that he or she has designed adequate disclosure

---

[20] Expert Report of Professor Jonathan R. Macey, ¶34.
[21] Expert Report of Professor Jonathan R. Macey, ¶35.

controls to ensure that material information relating to the registrant is made known to the CFO and CEO, including in the period the report is prepared.  The certification applies to the entire filing, including MD&A, and in no way is limited to just the financial statements.

39.  Clearly Congress and the SEC in requiring such certifications have recognized that the principal financial officer, in that role, and with the assistance of the financial team, do in fact participate in the preparation of more than just the financial statements included in an SEC filing.  In addition, it is very typical that a CFO today, will require members of the financial team to also provide similar certifications to the CFO to provide a reasonable basis for the certification.

40.  It is important to clarify that Mr. Prince was barred from "appearing or practicing before the SEC as an accountant."  The Commission's Order did not bar Mr. Prince from appearing or practicing before the SEC as an "auditor" or "outside accountant" or some other limited role.

41.  The Commission Order barring Mr. Prince broadly precluded him from appearing or practicing as an accountant before the SEC in any capacity.  Professor Macey's Expert Report inappropriately attempts to narrow the definition of what activities should be recognized as practicing as an accountant before the Commission.

## VIII.   Conclusion

42.  In conclusion, I reiterate the opinions offered in my October 14 Expert Report.  Based on his activities, roles, and responsibilities within ISI, Mr. Prince was practicing before the Commission as an accountant between December 1998 and December 2005.

43.   In addition, Professor Macey's opinion to the contrary is incorrect and is not supported by the available facts.


Dated this 14th day of November 2011


_____

Lynn E. Turner

### Documents and Information Considered

The following information was reviewed and/or considered in the preparation of my report, in addition to the documents and information I included in Turner Exhibit 10 of my October 14 Report.

### Non-Bates Stamped Documents

- Expert Report of Professor Jonathan R. Macey dated October 14, 2011
- SEC Deposition of Peter James Gaffney, June 18, 2007

### Websites

- http://www.imanet.org/mgi/Management_Accounting.aspx
- http://www.cmawebline.org/joomla4/index.php?option=com_content&view=article&id=10&Itemid=7

### Reference Materials

- Norman S. Johnson and Ross A. Albert, *Deja Vu All Over Again: The Securities and Exchange Commission Once More Attempts to Regulate the Accounting Profession Through Rule 102(e) of Its Rules of Practice*, 1999 Utah L. Rev. 553 (1999)
- Marie L. Coppolino, *Checkosky, Rule 2(E) and the Auditor: How Should the Securities and Exchange Commission Define its Standard of Improper Professional Conduct?*, 63 Fordham L. Rev. 2227 (1995)
- Todd J. Flagel, *SEC Must Clarify Its Position as to the Level of Culpability that Must Be Shown to Constitute a Rule 2(e)(1)(ii) Violation By Accountants*, 20 Dayton L. Rev. 1083 (1995)
- Andrew K. Glenn, *Disclosure of Executive Illnesses under Federal Securities Law and the Americans with Disabilities Act of 1990: Hobson's Choice or Business Necessity?*, 16 Cardozo L. Rev. 537 (1994)
- *KPMG, LLP v. Securities and Exchange Commission*, 289 F.3d 109 (D.C. Cir. 2002)
- *In re Worldcom, Inc. Securities Litig.*, 346 F. Supp. 2d 628 (S.D.N.Y. 2004)
- *Dannenberg v. PaineWebber Inc.*, 50 F.3d 615, 623 (9th Cir. 1994)
- *In re Enron Corp. Secs.*, 235 F. Supp. 2d (S.D. Tex. 2002)
- *James Thomas McCurdy, Petitioner v. Securities and Exchange Commission*, Respondent, 396 F. 3d 1258 (D.C. Cir. 2005)
- *Patricia A. Johnson, Petitioner, v. Securities and Exchange Commission*, 87 F.3d 484 (D.C. Cir. 1996)

**Turner Rebuttal Exhibit 1**

- *In the Matter of Jethro J. Barlow, CPA, Alan K. Burton, J. Edwards Cox, Robert G. Weeks, David A. Hesterman, and Kenneth L. Weeks*, Administrative Proceeding File No. 3-9952, Accounting and Audit Enforcement Release No. 1228, February 14, 2000
- *In the Matter of Luis E. Gomez, CPA*, Administrative Proceeding File No. 3-10333, Accounting and Auditing Enforcement Release No. 1322, September 29, 2000
- *In the Matter of  KPMG PEAT MARWICK LLP*, Admin. Proc. File No. 3-9500, Accounting and Auditing Enforcement Release No. 1360, January 19, 2001
- *Rules of Practice*, Securities and Exchange Commission, Release No. 34-35833; File No. s7-40-92
- *The Regulation of Securities Offerings*, Securities and Exchange Commission, Release No. 33-7606A; 34-40632A; IC-235194
- Sarbanes–Oxley Act of 2002 (Pub.L. 107-204, 116 Stat. 745, enacted July 30, 2002)
- 17 C.F.R. §229.509 (Item 509 of Regulation S-K)
- 17 C.F.R. §229.601 (Item 601 of Regulation S-K)
- 60 Fed. Reg. 3273
- 60 Fed. Reg. 32747
- 60 Fed. Reg. 32824
- 63 Fed. Reg. 67233
- 15 U.S.C.  §77k
- 15 U.S.C.  §78u