UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ELAINE M. BROWN, <u>et al.</u>, | ) ) |
| Defendants. | ) ) ) |

Civil Action No. 09-1423 (GK)

<u>**AMENDED MEMORANDUM OPINION**</u>

Plaintiff United States Securities and Exchange Commission ("SEC") brings this action against Defendants Elaine M. Brown and Gary A. Prince[1] alleging violations of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77a <u>et</u> <u>seq</u>, the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a <u>et</u> <u>seq</u>, and Rules promulgated under the Exchange Act. This matter is before the Court on Brown's Motion for Summary Judgment [Dkt. No. 95] and Prince's Motion for Partial Summary Judgement [Dkt. No. 94]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, Brown's Motion for Summary Judgment is **granted in part and denied in part** and Prince's

---

[1] The Complaint was originally brought against a third Defendant, Steven R. Chamberlain. On February 18, 2010, after receiving notice of Defendant Chamberlain's death, the Court granted the Consent Motion for Order Dismissing Defendant Steven R. Chamberlain as a Party pursuant to Fed. R. Civ. P. 21. [Dkt. No. 28].

Motion for Partial Summary Judgment is **granted in part and denied in part.**

I.   **Background**

     A.   **Factual Background[2]**

     Defendants Brown and Prince are former employees of Integral Systems, Inc. ("Integral"), a publicly traded Maryland corporation. Integral makes and sells satellite ground systems, including satellite communications systems and software products for satellite command and control.

     Defendant Brown was the Chief Financial Officer and Principal Accounting Officer of Integral from 1997 until May of 2007, and the Vice President of Administration from 2007 until she resigned from that position in July 2008. During her tenure with Integral, Brown signed the company's annual reports. Other members of Integral's management and the members of its Board of Directors also signed Integral's annual reports.

     Defendant Prince was hired in 1982 by Integral to perform part-time accounting services for the company. In 1993, Prince was appointed Integral's Vice President and Chief Financial Officer. Prince resigned his position as Integral's CFO in 1995, shortly before pleading guilty in the Central District of California to a conspiracy to commit securities fraud and to making false

---

[2] Unless otherwise noted, the facts set forth herein are drawn from parties' Statements of Material Facts Not in Dispute submitted pursuant to Local Rule 7(h).

statements in connection with his conduct as an officer of another corporation. United States v. Prince, No. 95-cr-00771 (C.D. Cal. Sept. 5, 1995).

In 1994, the United States District Court for the District of Columbia enjoined Prince from violating the antifraud and lying-to-auditors provisions of the Exchange Act based on the conduct underlying his guilty plea in the Central District of California. SEC v. Bolen, No. 93-cv-01331 (D.D.C. Aug. 18, 1994). In 1997, the SEC issued, and Prince agreed to comply with, an Order ("1997 Order") permanently barring Prince from appearing before the Commission as an accountant. In re Gary A. Prince, Release No. 38,765, 64 S.E.C. Docket 2074, 1997 WL 343054 (June 24, 1997).

In 1998, Prince was re-hired by Integral. Until his termination from Integral on March 30, 2007, Prince held various titles, including Director of Mergers and Acquisitions, Director of Strategic and Financial Planning, and Managing Director of Operations. The SEC alleges that Prince had "substantial authority and responsibilities" during this nine-year period that made him a de facto officer of Integral in violation of its 1997 Order. It claims that this "substantial authority and responsibilities" included Prince's authority to approve major contracts, attendance at Integral's Board of Director meetings, and evaluation of potential mergers. Prince was a member of a policy-making group of

senior executive officers and was compensated at levels equal to Integral's top-ranking officers.

In the period between 1998 and August 2006, when Integral named Prince as an officer, Prince's alleged status as a de facto officer of the company was never disclosed in periodic filings with the SEC or in proxy statements.  It was not until August 2006, that Integral filed a Form 8-K stating that Prince had been appointed Executive Vice President and Managing Director of Operations for the company and disclosing Prince's violation of the securities laws and inability to appear before the Commission as an accountant. Integral terminated Prince in March 2007, after the SEC's Enforcement Division commenced the investigation that led to this proceeding.

The SEC claims that the failure to disclose was a material omission in violation of provisions of the Securities Act, the Exchange Act, and related Rules. Specifically, the SEC alleges that both Defendants (1) violated § 17(a) of the Securities Act, (2) violated § 10(b) of the Exchange Act and Rule 10b-5, (3) aided and abetted Integral's violations of Exchange Act § 13(a) and Rules 12b-20 and 13a-1, (4) violated Exchange Act Rule 13a-14, and (5) aided and abetted violations of Exchange Act § 14(a) and Rule 14a-9 by Steven Chamberlain, Integral's former Chief Executive Officer. Defendant Prince is also charged with violations of Exchange Act § 16(a), Rule 16a-3, and the 1997 Order.

**B.    Procedural Background**

On July 30, 2009, the SEC filed this lawsuit against Defendants Brown and Prince alleging violations of the Securities Act, the Exchange Act, and related Rules [Dkt. No. 1]. On October 12, 2010, Defendants Brown and Prince filed Answers to the SEC's Complaint [Dkt. Nos. 61 and 62].

On September 28, 2009, Defendants Brown and Prince filed Motions to Dismiss [Dkt. Nos. 13 and 14]. On September 27, 2010, the Court granted in part and denied in part Brown's Motion to Dismiss and denied Prince's Motion to Dismiss. Order [Dkt. No. 55].

On January 27, 2012, Defendant Prince filed his Motion for Partial Summary Judgment. [Dkt. No. 94]. On March 2, 2012, the SEC filed its Opposition to Prince's Motion for Partial Summary Judgment. [Dkt. No. 100]. On March 23, 2012, Prince filed his Reply in Support of his Motion for Partial Summary Judgment. [Dkt. No. 110].

On January 27, 2012, Defendant Brown filed her Motion for Summary Judgment. [Dkt. No. 95]. On March 5, 2012, the SEC filed its Corrected Opposition to Brown's Motion for Summary Judgment. [Dkt. No. 108]. On March 23, 2012, Brown filed her Reply in Support of her Motion for Summary Judgment. [Dkt. No. 109]. On April 16, 2012, the SEC filed its Sur-Reply in Opposition to Brown's Motion for Summary Judgment. [Dkt. No. 116].

## II.  Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c), as amended Dec. 1, 2007; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006). In other words, the moving party must satisfy two requirements: first, that there is no "genuine" factual dispute and, second, if there is, that it is "material" to the case. "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Arrington, 473 F.3d at 333 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the case under the substantive governing law. Liberty Lobby, 477 U.S. at 248.

As the Supreme Court stated in Celotex Corp. v. Catrett, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. 317, 322 (1986). The Supreme Court has further explained,

> [a]s we have emphasized, "[w]hen the moving
> party has carried its burden under Rule 56(c),

> its opponent must do more than simply show
> that there is some metaphysical doubt as to
> the material facts. . . . Where the record
> taken as a whole could not lead a rational
> trier of fact to find for the nonmoving party,
> there is no 'genuine issue for trial.'"
> <u>Matsushita Elec. Industrial Co. v. Zenith
> Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct.
> 1348, 89 L.Ed.2d 538 . . . (1986) (footnote
> omitted). "'[T]he mere existence of <u>some</u>
> alleged factual dispute between the parties
> will not defeat an otherwise properly
> supported motion for summary judgment; the
> requirement is that there be no <u>genuine</u> issue
> of <u>material</u> fact.'"

<u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (quoting <u>Liberty Lobby</u>,

477 U.S. at 247-48) (emphasis in original).

However, the Supreme Court has also consistently emphasized

that "at the summary judgment stage, the judge's function is

not . . . to weigh the evidence and determine the truth of the

matter, but to determine whether there is a genuine issue for

trial." <u>Liberty Lobby</u>, 477 U.S. at 249. In both <u>Liberty Lobby</u> and

<u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150

(2000), the Supreme Court cautioned that "[c]redibility

determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts, are jury functions, not those

of a judge" deciding a motion for summary judgment. <u>Liberty Lobby</u>,

477 U.S. at 255.

**III. Analysis**

    **A.    Brown's Motion for Summary Judgment**

        **1.    Brown's Liability for Violations of Section 10(b) and Rule 10b-5**

Section 10(b) "prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act." <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164, 177 (1994). Primary liability under § 10(b) may be found for any person who:

> directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... use[s] or employ[s], in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j. On the basis of this statute, the SEC promulgated Rule 10b-5, which makes it unlawful for:

> any person, directly or indirectly, . . . . (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

The SEC alleges that Brown committed fraud in her role as Integral's principal financial and accounting officer. Specifically, the SEC contends that Brown made false statements in violation of Rule 10b-5(b) by signing and certifying as true Integral's public filings, when in fact she knew that those filings were false because they concealed that Prince was functioning as an executive officer of Integral. Brown argues that the SEC's claim fails because, in light of the Supreme Court's recent decision in Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296(2011),[3] it cannot establish that she was the "maker" of the alleged omission.

The SEC further contends that the record establishes that Brown violated Rule 10b-5(a) and (c) by substantially participating, with Chamberlain and Prince, in a fraudulent scheme to conceal Prince's true status as a de facto officer. Brown argues that the SEC's scheme liability claim fails because the SEC has not alleged that she is liable for anything other than Integral's omission of Prince.

> **a.    Genuine Issues of Material Fact Preclude Summary Judgment on the SEC's Claim Against Brown Under Rule 10b-5(b)**

Brown argues that Janus requires summary judgment on the SEC's claim charging her with primary violations of Rule 10b-5. Brown

---

[3] Janus was issued after this Court decided the Defendants' Motions to Dismiss.

relies on the holding in <u>Janus</u> that one is a "maker" of a false statement or omission for purposes of Rule 10b-5(b) only if that person had "ultimate authority" over the statement. <u>Janus</u>, 131 S. Ct. at 2302 ("[T]he maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."). Brown contends that, as a matter of law, the SEC cannot establish that she was the "maker" of the alleged omission with "ultimate authority" over its content and whether and how to communicate it. Brown further argues that the SEC has already determined that Integral was the "maker" of the omission, and has already alleged in the Third Claim for Relief that Brown merely aided and abetted Integral's omission.

The SEC responds that Brown's implicit contention that "there is only one 'ultimate authority' over a statement and therefore, after <u>Janus</u>, there can be only one 'maker'" is not supported by <u>Janus</u> or its progeny. SEC's Opp'n to Brown's Mot. for Summ. J. at 12. The SEC further argues that the signer of a corporate filing is always its "maker."

In <u>Janus</u>, the Supreme Court addressed a situation in which one legal entity, Janus Capital Management, served as mutual fund investment adviser for another legal entity, Janus Investment Fund. The Court concluded that investment adviser Janus Capital Management had not "made" any actionable misrepresentations or omissions, even though plaintiffs alleged that Janus Capital

-10-

Management had been significantly involved in preparing, but not signing, the prospectus. The Court reasoned that "nothing on the face of the prospectus indicate[d] that any statements" came from the investment adviser, and "none of the statements in the prospectuses were attributed, explicitly or implicitly, to [the adviser]." Id. at 2305, 2305 n. 11.

The facts in Janus are very different from those in this case. Janus involved two distinct legal entities, and addressed the issue of whether statements of one could be attributed to the other. Brown's role in the omission attributed to her in this case is not analogous to Janus Capital Management's relationship to the statements issued by Janus Investment Fund. It is undisputed here that Brown was Integral's principal financial and accounting officer and that, as such, she signed the filings at issue.

As the Southern District of New York recently held, "Janus did not [] alter the well-established rule that a corporation can act only through its employees and agents." In re Pfizer Inc. Sec. Litig., No. 04 Civ. 9866, 2012 WL 983548, at *4 (S.D.N.Y March 22, 2012) (internal quotations omitted) (citations omitted); see In re Merck & Co., Sec. Derivative & "ERISA" Litig., MDL No. 1658, 2011 WL 3444199, at *25 (D.N.J. Aug. 8, 2011); Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp., 2011 U.S. Dist. LEXIS 93873, at *15 (N.D. Ala. Aug. 23, 2011) ("nothing in Janus stands for the proposition that CEOs and CFOs [cannot] be

-11-

liable for false and misleading statements in their own company's financial statements, for which they signed Sarbanes-Oxley certifications.").

Both before and after the decision in <u>Janus</u>, courts have consistently held that the signer of a corporate filing is its "maker." In <u>Pfizer</u>, the court held that because Plaintiffs alleged that "Defendant McKinnell <u>signed</u> Pfizer's public filings [] [they] adequately allege[d] his liability, under <u>Janus</u>, for misrepresentations in those filings." 2012 WL 983548, at *4, n. 3 (emphasis added). Similarly, in <u>In re Stillwater Capital Partners Inc. Litig.</u>, the court held that corporate officer Hirst "signed the documents at issue and thereby 'made' the alleged misstatements." No. 1:11-2275, 2012 WL 1416837, at *7 (S.D.N.Y. April 23, 2012); <u>see also</u> <u>Merck</u>, 2011 WL 344199, at *25 (executive liable for statements in company's public filings when he signed those filings).

Whether one is the "maker" of a false statement turns on factual issues of scienter as well as "ultimate control" over the statement. Such control may be evidenced by "attribution within a statement" or "surrounding circumstances," including the signing of SEC filings. <u>See</u> <u>Janus</u>, 131 S. Ct. at 2302. Viewing the record in the light most favorable to the SEC and drawing all inferences in its favor, the Court concludes that there are adequate "surrounding circumstances" for the trier of fact to find that the omission at

issue was "made" by Brown. Therefore, Brown's Motion for Summary Judgment on the SEC's claim against her for violations of Rule 10b-5(b) is **denied**.

> **b.** **Genuine Issues of Material Fact Preclude Summary Judgment on the SEC's Scheme Liability Claim Against Brown Under Rule 10b-5(a) and (c)**

Brown next argues that the SEC cannot prevail on its Rule 10b-5(a) and (c) scheme liability claim against her because it has not alleged that she is liable for anything other than Integral's omission of Prince. The SEC responds that even if Brown correctly states the law, her argument fails because the record shows that its scheme liability claim is not based only on the omission of Prince's involvement.

As the Court noted in its opinion on the Motions to Dismiss, "to establish primary liability under Rule 10b-5(a) or (c), the alleged conduct must be more than a reiteration of the misrepresentations underlying the Rule 10b-5(b) misstatement claims." SEC v. Brown, 740 F. Supp. 2d 148, 172 (D.D.C. 2010). The Court further noted that "[p]rimary liability may arise out of the same set of facts under all three subsections 'where the plaintiffs allege both that the defendants made misrepresentations in violation of Rule 10b-5(b), as well as that the defendants undertook a deceptive scheme or course of conduct that went beyond the misrepresentations.'" Id. quoting In re Alstom SA, 406 F. Supp.

2d 433, 475 (S.D.N.Y. 2005). There is a difference between a 10b-5(b) failure to disclose and a 10b-5(a) and (c) scheme to conceal that failure to disclose.

The SEC points to evidence that, when construed in the light most favorable to the SEC, could lead the trier of fact to find that Brown took affirmative steps to conceal Prince's status that "went beyond the misrepresentation." For instance, the SEC claims that Brown not only omitted Prince's status as a de facto officer from public filings with the SEC, but also took steps to ensure that internal records of the company and email communications were consistent with Integral's desire not to disclose Prince. While it may be true, as Brown contends, that the SEC's proffered evidence reflects nothing more than "mundane events" and that her consultations with Venable are inconsistent with a scheme to defraud, such a determination, which necessarily requires the weighing of the evidence, must be left for the trier of fact. Therefore, Brown's Motion for Summary Judgment on the SEC's claim against her for violations of Rule 10b-5(a) and (c) is **denied.**

> **2. Brown's Liability for Aiding and Abetting Integral's Violations of Section 13(a) and Rules 12b-20 and 13a-1**

Brown contends that she cannot be both primarily liable for "making a false statement under Rule 10b-5(b) and secondarily liable for aiding and abetting Integral's filing of false statements in violation of Section 13(a). Brown argues that she is

"at worst, either secondarily liable for having aided and abetted Integral's omission of Mr. Prince [] or primarily liable for omitting Mr. Prince herself," but that she "cannot, however, be both." Brown's Mot. for Summ. J. at 14, n. 7. The SEC responds that there is nothing inconsistent about its pleading or proof.

Section 13(a) and Rule 13a-1 require that every "<u>issuer</u> of a security registered pursuant to section 12 shall <u>file</u> with the Commission" certain documents consistent with SEC regulations, while Rule 12b-20 requires that any such filings not be misleading. <u>See</u> 15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.13a-1 and 240.12b-20 (emphasis added). Thus, the statutes do not preclude the SEC from claiming that Brown both "made" a false statement in violation of Rule 10b-5(b) and aided and abetted Integral, the "issuer" of the security, with "filing" that false statement in violation of Section 13(a), Rule 12b-20 and Rule 13a-1. <u>See</u> <u>SEC v. Koenig</u>, 2007 WL 1074901, at *6-7 (N.D.Ill. April 5, 2007). Contrary to Brown's argument, the SEC is not required to choose between the two and allege only one or the other violation.

Brown raises no other grounds for summary judgment on this claim for relief. Accordingly, Brown's Motion for Summary Judgment on the SEC's claim against her for violations of Section 13(a) and Rules 12b-20 and 13a-1 is **denied**.

### 3.  Brown's Liability for Violations of Rule 13a-14

Brown next argues that the <u>Janus</u> decision warrants reconsideration of the Court's previous decision not to dismiss the SEC's claim for relief under Rule 13a-14. Brown contends that Janus makes clear that courts cannot go beyond the plain language of a statute to create individual liability where none exists.

More specifically, Brown argues that Rule 13a-14, and Section 13(a) under which it was promulgated, governs only the conduct of issuers. Brown contends that, "[s]ince the SEC did not allege that Ms. Brown aided and abetted Integral's violation of Rule 13a-14 [] summary judgment should be granted on the SEC's Fourth Claim for Relief" because "[a]fter Janus, individuals cannot be held primarily liable for violating that rule since it says nothing about individual liability." Id. at 2.

The SEC responds that <u>Janus</u> has no impact on the Court's prior ruling. The SEC notes that <u>Janus</u> interpreted the word "make" as used in Rule 10b-5(b), and that the word "make" does not appear in Rule 13a-14. The SEC further argues that <u>Janus</u> does not address the scope of Rule 13a-14 or impact in any way its statutory authority to claim that an individual is primarily liable for a violation of the Rule.

Brown relies upon the following language from Janus to support her contention that reconsideration of the SEC's claim under Rule 13a-14 is warranted:

-16-

> Congress also has established liability in
> § 20(a) for '[e]very person who, directly or
> indirectly, controls any person liable' for
> violations of the securities laws. First
> Derivative's theory of liability based on a
> relationship of influence resembles the
> liability imposed by Congress for control. To
> adopt First Derivative's theory would read
> into Rule 10b-5 a theory of liability similar
> to-but broader in application than-what
> Congress has already created expressly
> elsewhere.

Janus, 131 S. Ct. at 2304. In this passage, the Supreme Court notes
that Congress enacted Section 20(a) as a means to hold liable
entities that control any person who violates a securities law. The
Supreme Court is cautioning against expanding the narrow private
right of action under Rule 10b-5 to impose liability where Congress
already imposed liability under Section 20.

Brown has put forth no persuasive reason why this passage from
Janus, specifically limiting the scope of private rights of action
under Rule 10b-5, should be read to reach enforcement actions
brought by the SEC pursuant to Rule 13a-14. Brown also fails to
adequately address the Court's previous conclusion that "Section
21(d)(1) authorizes the Commission to bring an action in a United
States District Court 'to enjoin' any 'acts or practices
constituting a violation of any provision of this title [or] the
rules or regulations thereunder" and that "[i]n light of this
specific statutory authority, [] the SEC's claim to enforce Rule
13a-14 states a valid cause of action." Brown, 740 F. Supp. 2d at
165 (quoting 15 U.S.C. § 78u(d)(1)). Accordingly, the Court

declines to reverse its previous decision, or to depart from the majority of courts that have addressed the issue.[4]

Brown raises no other grounds for summary judgment on this claim for relief. Therefore, Brown's Motion for Summary Judgment on the SEC's claim against her for violations of Rule 13a-14 is **denied**.

### 4.    The SEC's Claim for Equitable Relief Against Brown

The SEC seeks equitable remedies against Brown, including a permanent injunction against future violations of the securities laws and a permanent officer and director bar. Brown argues that the SEC is not entitled to equitable relief because the alleged violation was not "flagrant" as she repeatedly sought the advice of outside counsel, the alleged violation involved a single omission and not a pattern of violations, and the SEC has failed to adduce

---

[4] As the Court previously observed, SEC claims for violations of the certification requirement of Rule 13a-14 are routinely permitted. Brown, 740 F. Supp. 2d at 164-165; see, e.g., SEC v. Geswein, No. 5:10-cv-1235, 2011 WL 4541303 at *3 (N.D. Ohio Sept. 29, 2011) ("[T]he SEC has the authority to bring an enforcement action [against officers] under Rule 13a-14."); SEC v. Fuhlendorf, No. C09-1292, 2011 WL 999221, at *9 (W.D. Wash. Mar. 17, 2011); SEC v. Das, No. 8:10-cv-102, 2010 WL 4615336, at *10 (D.Neb. Nov. 4, 2010); SEC v. Stanard, No. 06-cv-7736, 2009 WL 196023, at *28 (S.D.N.Y. Jan. 27, 2009); SEC v. Brady, No. 05-cv-1416, 2006 WL 1310320, at *5 (N.D. Tex. May 12, 2006); SEC v. Sandifur, No. 05-cv-1631C, 2006 WL 538210, at *8 (W.D. Wash. Mar. 2, 2006); but see SEC v. Retail Pro, Inc., 673 F.Supp.2d 1108, 1143 n.8 (S.D. Cal. 2009) (citing SEC v. Black, No. 04-cv-7377, 2008 WL 4394891 (N.D. Ill. Sept. 24, 2008) as evidence of a "conflict among courts [as] to whether a violation of the certification requirement of Rule 13a-14 supports a separate cause of action," which it declined to address).

any evidence showing a reasonable likelihood that she would commit violations in the future. Brown's Mot. for Summ. J. at 21-30.

The SEC responds that it is entitled to equitable relief because "Brown engaged in a course of conduct over a six year period that constituted substantial participation in a scheme to defraud, including deceptive acts intended to conceal Prince's role at ISI" and because the record "supports a finding of a reasonable likelihood of future violations." SEC's Opp'n to Brown's Mot. for Summ. J. at 19-20.

To obtain an injunction against Brown, the SEC must demonstrate that there is a reasonable likelihood that she will engage in future violations. SEC v. Savoy Indus., Inc. 587 F.2d 1149, 1168 (D.C. Cir. 1978). Under the Savoy Industries test, courts should consider "whether a defendant's violation was isolated or part of a pattern, whether the violation was flagrant and deliberate or merely technical in nature, and whether the defendant's business will present opportunities to violate the law in the future." SEC v. First City Fin., 890 F.2d 1215, 1228 (D.C. Cir. 1989) (citing Savoy Indus., 587 F.2d at 1168). "No single factor is determinative; instead, [] district court[s] should determine the propensity for future violations based on the totality of the circumstances." Id. (citations omitted).

The SEC has failed to demonstrate that there is a reasonable likelihood that Brown will engage in future violations of the

securities laws. Most significantly, the SEC has neither alleged nor adduced evidence that Brown is currently seeking employment in securities-related positions or that she is currently or prospectively capable of committing any securities violations. It is undisputed that Brown has not been employed by Integral since 2008, that she does not work for a publicly traded company, and that she has no legal reporting obligations to the SEC. Moreover, the SEC never questioned the integrity of Integral's financials, Brown's principal area of responsibility as CFO, nor did it allege any investor losses or personal gain by Brown. There is also no allegation that Brown engaged in repeated affirmative misconduct, self-dealing, insider trading or financial fraud.

These circumstances do not support a finding of a reasonable likelihood of future violations. Therefore, Brown's Motion for Summary Judgment on the injunctive relief and an officer director bar sought by the SEC is **granted.**

### 5.   Statute of Limitations

As neither the Exchange Act nor the Securities Act includes a statute of limitations, Brown argues that the "catch-all" statute of limitations in 28 U.S.C. § 2462 applies to bar all claims based on conduct that occurred more than five years before the filing of the Complaint. Section 2462 states that:

> Except as otherwise provided by Act of Congress, an action, suit, or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not

>be entertained unless commenced within five
>years from the date when the claim first
>accrued if, within the same period, the
>offender or the property is found within the
>United States in order that proper service may
>be made thereon.

28 U.S.C. § 2462. Specifically, Brown argues that she is entitled to a judgment that all conduct before July 30, 2004 is time-barred because the SEC has adduced no evidence to demonstrate why the five-year statute of limitations should not apply.

The SEC contends that the record evidence supports a finding that the five-year statute of limitations is tolled by the discovery rule, or in the alternative, by the continuing violation doctrine.

### a. The Discovery Rule Does Not Toll the Statute of Limitations for the SEC's Civil Penalties Claims

In its Opposition to Brown's Motion for Summary Judgment, the SEC notes that, "[w]hile this Court previously ruled that the doctrine of fraudulent concealment was not applicable here, the fraudulent concealment doctrine and the discovery rule are distinct bases for extending the statute of limitations." SEC's Opp'n to Brown's Mot. for Summ. J. at 22, n. 12. The SEC then suggests that the Court "confuse[d] the discovery rule and the doctrine of fraudulent concealment." Id.

The Court perceives no adequate reason to reverse its previous decision that "the five-year statute of limitations in § 2462 is not tolled for the civil penalties claims." Brown, 740 F. Supp.

2d at 158. Under the discovery rule, "a cause of action accrues when the injured party discovers-<u>or in the exercise of due diligence should have discovered</u>-that it has been injured." <u>Nat'l Treasury Emps. Union v. FLRA</u>, 392 F.3d 498, 501 (D.C. Cir. 2004) (internal quotation omitted) (emphasis added). The SEC contends that, under the rule, its right of action did not accrue "until January 9, 2006 when . . . the SEC had or could have had any inkling about Prince." SEC's Opp'n to Brown's Mot. for Summ. J. at 23.

However, even if the discovery rule applies here-an issue the Court need not decide-the SEC would not benefit from the rule because, as the Court previously held, the SEC's Complaint "fails to allege any facts that would establish that the SEC used <u>due diligence</u> in trying to uncover Defendants' wrongdoing from 1998 to 2005." <u>Brown</u>, 740 F. Supp. 2d at 158 (emphasis added). The Court further held that, "[m]ore problematically, the Complaint fails to allege when the SEC discovered the claims; there are no allegations that the SEC remained ignorant of Prince's role at Integral up until five years or less before filing its complaint." <u>Id.</u>

The SEC did not seek to amend its Complaint, and it cannot cure pleading defects in an opposition to a motion for summary judgment. <u>Calvetti v. Antcliff</u>, 346 F. Supp. 2d 92, 107 (D.D.C. 2004); <u>see also</u> <u>Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.</u>, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is

axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."). Accordingly, the Court's holding, that the five-year statute of limitations is not tolled by the discovery rule for the civil penalties claims, still applies.

>    **b.   Genuine Issues of Material Fact Preclude a Final Ruling as to the Applicability of the Continuing Violation Doctrine**

Brown argues that the SEC has neither alleged, adduced nor proffered any evidence concerning or supporting the applicability of the continuing violation doctrine. Brown contends that "this case is about an alleged disclosure violation based on a single omission, not based on any patterns of continuous and affirmative conduct" and that, therefore, she is entitled to summary judgment on the issue. The SEC disputes Brown's characterization of the alleged violation, arguing that the violation in this case is a continuing one whereby, "[t]he scheme to defraud and the deceptive acts in furtherance occurred from 1999 through 2006." SEC's Opp'n to Brown's Mot. for Summ. J. at 25.

In ruling on Brown's Motion to Dismiss, the Court noted that this Circuit has not considered whether the continuing violation doctrine applies to claims brought in the securities fraud context. Brown, 740 F. Supp. 2d at 158. The Court further noted that district courts in the Second and Third Circuits have indicated great skepticism that it does. Id.; see In re Comverse Tech., Inc. Sec. Litig., 543 F.Supp.2d 134, 155 (E.D.N.Y. 2008) (noting that

"[t]he weight of authority in [the Second Circuit] is skeptical of the application of the continuing violations doctrine in securities fraud cases"); <u>In re DVI, Inc. Sec. Litigation</u>, No. 03-cv-5336, 2005 WL 1307959, at *11 (E.D. Pa. May 31, 2005) (declining to extend continuing violation doctrine to case brought under securities laws) (unreported opinion); <u>but see</u> <u>SEC v. Kelly</u>, 663 F.Supp.2d 276, 287-88 (S.D.N.Y. 2009) (applying continuing violation doctrine in case brought by SEC). The Court then deferred ruling on whether the continuing violation doctrine applied here pending a more fully developed factual record. <u>Id.</u> at 159.

The Court noted, for example, factual disputes that would bear on its decision, including when the alleged scheme to conceal Prince's officer status began and when Brown's obligation to disclose his status arose, if she had such an obligation. <u>Id.</u> These facts are in dispute. In order to determine whether or not Brown had an obligation to disclose Prince's status as an officer, it will be necessary for the trier of fact to evaluate the Venable lawyers' credibility as to their knowledge of Prince's role at Integral and the nature and extent of the advice that they gave Brown. Accordingly, Brown's Motion for Summary Judgment on the SEC's claims for civil penalties based on conduct occurring before July 30, 2004 is **denied**.

B.   **Prince's Motion for Partial Summary Judgment**

    1.   **Prince's Liability for Violations of Section 10(b) and Rule 10b-5**

The SEC's Complaint alleges that Prince drafted and prepared the Management Discussion and Analysis section of the periodic reports Integral was required to file with the SEC, which addressed the company's financial results for that period. Compl. ¶ 39. Prince is also alleged to have created and prepared internal quarterly financial results and forecasts which were incorporated into the periodic reports to the SEC. Id. The SEC further alleges that Prince reviewed, commented on, and approved Integral's draft annual reports and proxy statements. Id. ¶ 35.  Prince argues that these allegations fail to state a claim under Rule 10b-5(b) because, in light of the Supreme Court's decision in Janus, the SEC cannot establish that he "made" any material misstatement or omission or that he had a duty to disclose or clarify any material omission by Integral.

In addition to its Rule 10b-5(b) claim, the SEC contends that Prince is liable under Rule 10b-5(a) and (c) for, respectively, employing a "device, scheme or artifice to defraud," and engaging in an "act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5. Prince argues that the SEC's claim for scheme liability fails because there is no evidence in the record that Prince

engaged in any deceptive acts in connection with an alleged scheme to defraud.

### a. The SEC Concedes its Claim Against Prince Under Rule 10b-5(b)

Prince contends that under <u>Janus</u>, the SEC cannot establish that he "made" any of the alleged material misstatements or omissions at issue. Nor, according to Prince, can the SEC establish that he had a duty to clarify any alleged material omissions by Integral. The SEC responds by "conced[ing] that as a result of the Supreme Court's decision in [<u>Janus</u>], the Second Claim for Relief against Prince can no longer rest on violations of subsection Rule 10b-5(b)." SEC's Opp'n to Prince's Mot. for Partial Summ. J. at 2, n. 2.

Accordingly, Prince's Motion for Summary Judgment on the SEC's claim against him for violations of Rule 10b-5(b) is **granted.**

### b. Genuine Issues of Material Fact Preclude Summary Judgment on the SEC's Scheme Liability Claim Against Prince Under Rule 10b-5(a) and (c)

Prince argues that the SEC cannot sustain its scheme liability claim against him under Rule 10b-5(a) and (c) "by pointing to an independent claim [<u>i.e.</u> a violation of Section 16(a) of the Exchange Act] that assumes, as its premise, the disputed issue which is at the heart of this proceeding." Prince's Mot. for Partial Summ. J. at 18. Prince further contends that "the undisputed documentary record demonstrates that Mr. Prince's

conduct at Integral was not concealed in any way, and was widely known both within the company and to Integral's outside disclosure counsel at the Venable law firm." Id. 16.

The SEC responds by arguing that knowledge known within Integral is irrelevant to the issue of whether Prince purposefully concealed from the public his status as a de facto officer of the Company. The SEC further contends that Prince's alleged reliance on advice from Venable is to no avail because there are genuine issues of material fact regarding what Venable lawyers knew and when they knew it.

In ruling on the Defendants' Motions to Dismiss, the Court held that the SEC's allegations state a claim under Rule 10b-5(a) and (c) for scheme liability because, if the SEC was able to establish that "Prince did act as an officer of Integral Systems with scienter, a reasonable fact finder could conclude that his failure to file the reports required under § 16(a) was done with the purpose and effect of concealing his officer status from the public." SEC v. Brown, 740 F. Supp. 2d at 172; see In re Alsom SA, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005) ("[S]ubsections (a) and (c) of Rule 10b-5 encompass a wide range of activities and are not limited to the prohibition of market manipulation."). Therefore, as previously held, and contrary to Prince's argument in this Motion, a scheme liability claim under Rule 10b-5(a) and (c) may rest upon

a violation of § 16(a).[5] The question is whether there is a genuine issue of material fact for trial on the SEC's scheme liability claim.

The SEC is correct that the "gist of [Prince's] argument is factual" as it largely depends upon what the Venable lawyers knew, and what advice Prince received, about his conduct at Integral. SEC's Opp'n to Prince's Mot. for Partial Summ. J. at 16. These facts relate directly to Prince's scienter, an element of the SEC's scheme liability claim that cannot be resolved at this stage because the record is replete with genuine issues of material fact. For example, the parties disagree about what information was disclosed to Venable, when that information was disclosed to Venable, the extent and nature of the advice given by Venable, and whether Prince relied on that advice in good faith.

As Prince concedes, resolution of these facts turn on credibility determinations. Prince states that, in determining "whether Prince was a de facto officer of ISI . . . and whether ISI's non-disclosure thereof was appropriate . . . it will be necessary for this Court to evaluate [the Venable] lawyers' credibility at trial vis-a-vis the clear, contemporaneous evidentiary record that exists as to their knowledge of and advice

---

[5] Section 16(a) requires anyone "who is a director or an officer of the issuer of [any equity] security" to file a statement concerning any holdings and transactions of the issuer's securities. 15 U.S.C. § 78p(a).

to their client, ISI." Prince's Mot. for Partial Summ. J. at 5, n. 2.

Drawing all reasonable inferences in favor of the SEC, and avoiding credibility determinations and the weighing of evidence, the Court concludes that, should the trier of fact find that Prince was a <u>de facto</u> officer of Integral, there is a genuine dispute of material fact over whether Prince knowingly concealed that status from the public. Therefore Prince's Motion for Summary Judgment on the SEC's claim against him for violations of Rule 10b-5(a) and (c) is **denied**.

### 2.   Prince's Liability for Violations of the SEC's 1997 Rule 102(e) Bar Order

The 1997 Administrative Order against Prince was issued by the SEC pursuant to Sections 102(e) and (f) of the Commission's Rules of Practice. <u>See</u> 17 C.F.R. §§ 201.102(e), (f). The Rule 102(e) bar order entered against Prince by the SEC on June 24, 1997 provides that: "Prince is permanently denied the privilege of appearing or practicing before the Commission as an accountant." In re Gary A. Prince, Release No. 38,765, 64 S.E.C. Docket 2074, 1997 WL 343054 (June 24, 1997). The SEC contends that Mr. Prince violated the bar order during the period from December 30, 1998 until August 2, 2006. As a result, the SEC is asking the Court to issue a permanent injunction commanding Prince to comply with the Commission's 1997 Rule 102(e) bar order.

### a.   The 1997 Order Is Valid

Prince argues, as a threshold matter, that there is virtually "no guidance from the SEC or precedent" that articulates a clear standard as to when a Rule 102(e) proceeding is triggered and that, therefore, "it is not surprising that academic commentators have observed that Rules 102(e) and (f) 'suffer[] from a fatal lack of clarity.'"[6] Prince's Mot. for Partial Summ. J. at 20. The SEC disputes this contention, arguing that any deficiency with the Rule 102(e) standard "was resolved long ago." SEC's Opp'n to Prince's Mot. for Partial Summ. J. at 19.

Prince's assertion that Rule 102(e) is deficient runs contrary to this Circuit's position that the Rule "clearly sets out the standard for when an accountant is deemed to have engaged in 'improper professional conduct.'" <u>Marrie v. S.E.C.</u>, 374 F.3d 1196, 1203 (D.C. Cir. 2004) (providing an extensive background on the dialogue between the D.C. Circuit and the SEC that led to the 1998 amendment of Rule 102(e)).[7] Therefore, the question is not whether

---

[6] Rule 102(e) provides the SEC may "deny, temporarily or permanently, the privilege of appearing or practicing before [the Commission] in any way to any person who is found by the Commission ... to have engaged in unethical or improper professional conduct." 17 C.F.R. § 201.102(e). Rule 102(f) provides that "practicing before the Commission includes but shall not be limited to . . . [t]he preparation of any statement, opinion, or other paper by any attorney, accountant, engineer, or other professional or expert" that is filed with the Commission with the consent of the person who prepared it. 17 C.F.R. § 201.102(f).

[7] Tellingly, Prince relies exclusively on law review articles,
(continued...)

the 1997 Order pursuant to Rule 102(e) is valid, but rather, whether Prince violated that Order by practicing before the Commission as an accountant at Integral.

> **b.   The SEC's Interpretation of Its 1997 Order Pursuant to Rules 102(e) and (f) Is Entitled to Deference**

The parties dispute the meaning of "practicing before the Commission as an accountant" used in the 1997 Order pursuant to Rules 102(e) and (f). Prince argues that, even if the 1997 Order is deemed valid, an "analysis of the limited guidance on the issue - including the very same authority relied upon by the SEC and its expert - makes plain that the functions performed by Mr. Prince at ISI did not constitute practicing before the Commission as an accountant within the meaning of Rules 102(e) and (f)." Prince's Mot. for Partial Summ. J. at 20-21. Prince contends that the decision principally relied upon by the SEC and its experts to conclude that Prince violated the 1997 Order, namely In re Robert W. Armstrong III, Release No. 34-51920, 85 S.E.C. Docket 2321, 2005 WL 1498425 (June 24, 2005), rests on facts that are distinguishable from this case and ultimately support a finding that he did not practice before the Commission.

More specifically, Prince contends that, unlike here, Armstrong involves an individual who "computed the figures and

---

[7](...continued)
published between 1984 and 1999, to support his argument.

provided the data" for public filings containing false, inaccurate, or misleading statements or financial information. Id. at 21-22. Prince argues, based on disputed facts, that the instant case is distinguishable because he did not compute figures or provide data for public filings while at Integral, and because the SEC has not alleged that any of Integral's public filings contained any false, inaccurate or misleading information. Prince asserts that, "[w]hile it is true that [he] reviewed ISI's public filings and sometimes provided comments on the filings, Commission precedent (and common sense) require that individuals play a much more direct and expansive role in preparing public filings in order to find that such involvement constitutes practicing before the Commission." Id. at 23.

In response, the SEC argues that it is clear that Prince violated the 1997 Order because "Rule 102(f) encompasses all those who 'participate in the preparation of' a document filed with the Commission, even if the individual did not sign the document, is not identified in the document, and did not have final responsibility for the document." SEC's Opp'n to Prince's Mot. for Partial Summ. J. at 20. The SEC relies on Armstrong to support its position that individuals are "practicing before the commission" if they create, compile, or edit information or data included in filings with the Commission; and that Rule 102(e) is not limited to

instances where conduct is fraudulent or unlawful. Id. at 20-22, 24-25.

In Armstrong, the SEC reversed an Administrative Law Judge's decision which held that Robert Armstrong[8] engaged in securities fraud, but that he was not subject to discipline under Rule 102(e) because he was not 'practicing before the Commission' within the meaning of Rule 102(f). The Commission ruled that Armstrong had in fact practiced accounting before the Commission.

In analyzing Rule 102(f), the Commission in Armstrong stated that "[t]he text of the Rule does not specify that a person must sign a document filed with the Commission. Moreover, the term 'preparation' of a document is, we believe, sufficiently broad to encompass the preparation of data to be included in a document filed with the Commission, at least where, as here, the data was prepared for the express purpose of being included in such a document." Armstrong, 2005 WL 1498425 at *11. Relying on this broad reading of Rule 102(f), the Commission reasoned that:

> The law judge's holding would allow accountants to escape discipline under Rule 102(e) simply by instructing someone else to draft, sign, and file fraudulent documents. The Rule, however, recognizes that financial statements often incorporate information created, compiled, or edited by accountants who are not responsible for signing or filing the financial statements. Thus, practicing

---

[8] Armstrong was the vice president and controller of a subsidiary of a public company whose financial results were reported with those of its parent company. Armstrong, 2005 WL 1498425 at *2-3.

> before the Commission includes <u>computing the</u>
> <u>figures and supplying the data</u> incorporated
> into Commission filings <u>and consenting to</u>
> <u>their incorporation</u>.

<u>Armstrong</u>, 2005 WL 1498425 at *11 (emphasis added). The Commission concluded that "[t]he reliability of the disclosure process" would be impaired if incompetent or unethical accountants were permitted "to participate in the preparation of financial statements certified and filed with the Commission." <u>Id.</u>

Thus, while Prince is correct that the Commission found that Armstrong practiced before it because he "computed the figures and provided the data," and consented to their inclusion in filings with the Commission, the SEC is also correct that <u>Armstrong</u> clearly established that an individual may also be found to have "practic[ed] before the Commission" if he or she "participate[d] in the preparation of" financial statements filed with the Commission by, for example, "creat[ing]," "compil[ing]" or "edit[ing]" information or data incorporated into those documents and consenting to their incorporation. <u>See</u> <u>Id.</u>

Prince's argument that the 1997 Order prohibits only fraudulent or inaccurate accounting finds no support in the language of the 1997 Order, the underlying Rule, or in <u>Armstrong</u>. The Order issued against Prince unambiguously "denied [him] the privilege of appearing or practicing before the Commission as an accountant." Nothing in the Order or the Rule suggests that he

could continue to practice before the SEC so long as he did not engage in fraud.

The Commission's interpretation in <u>Armstrong</u> of "practicing before the Commission" is consistent with the language of Rule 102(f). Prince points to no past practices or pronouncements that are inconsistent with this interpretation. Consequently, it is reasonable, especially in view of the purpose of Rule 102(e),[9] to accord deference to the Commission's interpretation of it.[10] <u>See Bowles v. Seminole Rock & Sand Co.</u>, 325 U.S. 410, 414 (1945) (holding that an agency's interpretation of one of its own regulations "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."); <u>see also</u> <u>Drake v. FAA</u>, 291 F.3d 59, 67 (D.C. Cir. 2002) ("Recent decisions of this court make it clear that we owe deference to an agency's interpretation advanced during litigation regarding the meaning of an ambiguous regulation, if the position is not inconsistent with

---

[9] Rule 102(e) "is directed at protecting the integrity of the Commission's own processes, as well as the confidence of the investing public in the integrity of the financial reporting process." <u>Marrie v. S.E.C.</u>, 374 F.3d 1196, 1200 (D.C. Cir. 2004).

[10] The SEC also argues that "practicing before the Commission" as an accountant encompasses those who merely "review" a financial statement or related disclosure filed with the SEC. SEC's Opp'n to Prince's Mot. for Partial Summ. J. at 23. The Court need not address the merits of this position because as discussed, <u>infra</u>, the record is replete with genuine issues of material fact under <u>Armstrong</u> as to whether Prince practiced before the Commission as an accountant.

the agency's prior statements and actions regarding the disputed
regulation.").

> ### c. There Are Genuine Disputes of Material Fact as to Whether Prince Practiced Accounting Before the Commission.

Prince admits that he reviewed and "sometimes provided
comments" on Intergral's financial filings, but denies that his
comments were anything more than "limited, prose-style drafting."
Prince's Mot. for Partial Summ. J. at 22-23. Prince states that he
"never provided any of the numbers or financial figures for
inclusion in the filings; never made any substantive accounting
judgments in connection with preparation of the filings; and never
played any role in determining the appropriateness or accuracy of
ISI's financial records set forth in the filings." Id. at 23.
Relying on the expert testimony submitted by Professor Jonathan
Macey, Prince further contends that, to the extent that he dealt
with Integral's financial statements and related disclosures, he
did so as a corporate manager, not as an accountant.[11]

------------------------------------------------------------

[11] Prince also argues that there is no evidentiary basis to support
the SEC's charge that Prince knowingly failed to comply with the
1997 Order because "at every turn Mr. Prince, Mr. Chamberlain and
the ISI Board of Directors consulted with Venable and took steps to
ensure that Mr. Prince's job function complied with both the letter
and the spirit of the 1997 Rule 102(e) bar order." Id. at 27.
However, as discussed supra at Part III.B.1.b, there are genuine
issues of material fact regarding, for example, what information
was disclosed to Venable, when that information was disclosed to
Venable, the extent and nature of the advice given by Venable, and
whether Prince relied on that advice in good faith.

The SEC responds that "Prince was undoubtedly the dominant figure at ISI with respect to the company's financial statements and disclosures" and that he "generat[ed] figures and data that became part of ISI's financial filings and also [made] accounting judgments that affected the accuracy and completeness of those filings." SEC's Opp'n to Prince's Mot. for Partial Summ. J. at 28-29. The SEC then points to evidence that it contends establishes that Prince participated directly and substantively in the preparation of Integrated's filings, including numerous 10Q's and 10-K's. Id. at 29-33.

With respect to Prince's contention that he acted as a corporate manager and not as an accountant, the SEC relies on the conclusions of its own expert, Mr. Lynn Turner, who submitted a detailed report rebutting Professor Macey's testimony. Id. at 25-28.

Thus, it is clear that the SEC has raised genuine issues of material fact as to whether Prince's participation in the preparation of SEC filings while at Integral constitutes "practicing before the Commission" as defined in Armstrong. The SEC, for example, points to evidence suggesting that Prince calculated figures incorporated into the 10-K for FY 2001, made numerous edits and recommendations to the 10-K for FY 2002, and took the lead in preparing the 10-K for FY 2004 and the 10-Q for

the quarter ending December 31, 2004. <u>See</u> SEC's Opp'n to Prince's Mot. for Partial Summ. J. at 5-13, 28-33.

While it may be true, as Prince contends and purports to establish through the testimony of his fact witnesses and experts, that the SEC is mischaracterizing and taking out of context evidence in the record, such a weighing of the evidence is not appropriate at this stage and must be left for the trier of fact. Whether Prince's role at Integral was more akin to a corporate manager than an accountant requires a fact-specific inquiry and expert credibility determinations that are inappropriate for summary judgment. Therefore, Prince's Motion for Summary Judgment on the SEC's claim against him for violations of the 1997 Rule 102(e) bar order is **denied.**

### 3. The SEC's Claim for Injunctive Relief Against Prince

Prince contends that there is no evidence to support the notion that there is a reasonable likelihood that he will violate the 1997 Order in the future, and that therefore, the permanent injunction the SEC seeks must be rejected. However, that assessment necessarily requires an evaluation of material factual issues that are in dispute. For example, the SEC points to evidence suggesting that Prince is currently "solicit[ing] business by claiming to have been involved in the preparation of financial statements for more than 100 companies," and claims that it will present evidence showing that Prince is a recidivist who has engaged in several

-38-

securities violations throughout his career. <u>See</u> SEC's Opp'n to Prince's Mot. for Partial Summ. J. at 35-36. Prince disputes the sufficiency of the SEC's proffered evidence, arguing that injunctive relief is "simply not justified as a matter of law." Prince's Mot. for Partial Summ. J. at 38.

Whether or not the SEC's evidence is sufficient to meet its burden requires the Court to hear and weigh the evidence, which is properly done at trial. Therefore, Prince's Motion for Summary Judgment on the injunctive relief sought by the SEC is **denied.**

IV. **CONCLUSION**

For the reasons set forth above, Brown's Motion for Summary Judgment is **granted in part and denied in part** and Defendant Prince's Motion for Partial Summary Judgment is **granted in part and denied in part.** An Order will accompany this Memorandum Opinion.


July 19, 2012                              _/s/_____
                                           Gladys Kessler
                                           United States District Judge


<u>Copies to</u>: attorneys on record via ECF